# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUAN LUCIANO MACHADO AMADIS,

        PLAINTIFF,

v.

U.S. DEPARTMENT OF JUSTICE, *ET. AL.*,

        DEFENDANTS.

CIVIL ACTION NO.: 16-2230 (TNM)

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

# **CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTS ........................................................................................................................... 1

SUMMARY OF FOIA REQUESTS AND FOIA CLAIMS IN THIS ACTION ......................... 2

LEGAL STANDARDS ...................................................................................................... 3

ARGUMENTS ................................................................................................................ 3

I.      Plaintiff's Declaratory Judgment Act And The All Writs Act Claims Fail ...................... 3

II.     State, DEA, and FBI Have Performed Adequate Searches ............................................ 5

      A.      Law Regarding Adequacy of the Search ................................................................ 5

      B.      State Conducted Adequate Searches ...................................................................... 6

            1.      State FOIA Request F-2016-10536 (Count 3) ............................................ 6

            2.      State FOIA Request F-2017-12067 (Count 9) ............................................ 8

      C.      DEA Conducted Adequate Searches ...................................................................... 9

            1.      DEA Case No. 16-00541-P (Count 1) ....................................................... 9

            2.      DEA Case No. 17-00383-P (Count 6) ..................................................... 10

            3.      DEA Case No. 17-00384-P (Count 4) ..................................................... 11

      D.      FBI Conducted Adequate Searches ...................................................................... 14

            1.      FBI Request No. 1355450-000 (Count 2) ................................................ 14

            2.      FBI Request No. 1374274-000 (Count 7) ................................................ 15

            3.      FBI Request No. 1374278-000 (Count 5) ................................................ 16

III.    FBI and OIP Have Properly Withheld Records ......................................................... 18

      A.      Legal Standards for Withholding Responsive Records ......................................... 18

      B.      FBI Properly Withheld Records – Request No. 1374274-000 (Count 7) ............... 19

            1.      Exemption 7(E) ........................................................................................ 20

            2.      Glomar Response ..................................................................................... 23

            3.      Release of Segregable Information ........................................................... 25

      C.      OIP Properly Withheld Records – Request No. DOJ-2017-004087 (Count 8) .... 25

            1.      Exemption 5 ............................................................................................. 26

            2.      Exemption 6 ............................................................................................. 32

            3.      Release of Segregable Information ........................................................... 34

      D.      OIP Properly Determined that Certain Records Were Nonresponsive ................. 35

IV.     Plaintiff Failed To Exhaust Administrative Remedies For Count 4 and Count 5 ........... 36

CONCLUSION ............................................................................................................. 39

# TABLE OF AUTHORITIES

## Cases

Am. Immigration Council v. DHS,
  905 F. Supp. 2d 206 (D.D.C. 2012) ................................................................. 31, 32

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) .................................................................................................... 8

Baez v. Dep't of Justice,
  647 F.2d 1328 (D.C. Cir. 1980) ............................................................................... 39

Blackwell v. FBI,
  646 F.3d 37 (D.C. Cir. 2011) ............................................................................. 26, 27

Brayton v. Office of U.S. Trade,
  Rep., 641 F.3d 521 (D.C. Cir. 2011) ......................................................................... 8

Brunetti v. FBI,
  357 F. Supp. 2d 97 (D.D.C. 2004) ........................................................................... 23

Burka v. U.S. Dep't of Health & Human Servs.,
  87 F.3d 508 (D.C. Cir. 1996) ................................................................................... 31

Campbell v. U.S. Dep't of Justice,
  164 F.3d 20 (D.C. Cir. 1998) ................................................................................... 25

Carter v. U.S. Dep't of Commerce,
  830 F.2d 388 ....................................................................................................... 38, 39

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) .................................................................................................... 8

Coastal Gas States Corp. v. Dep't of Energy,
  617 F.2d 854 (D.C. Cir. 1980) ................................................................................. 32

Dep't of Air Force v. Rose,
  425 U.S. 352 (1976) .................................................................................................. 38

Dep't of Interior v. Klamath Water Users Protective Ass'n,
  532 U.S. 1 (2001) ........................................................................................... 31, 34, 36

Dep't of Justice v. Reporters Comm. for Freedom of the Press,
  489 U.S. 749 (1989) ............................................................................................. 37, 38

Dettman v. Dep't of Justice,
  802 F.2d 1472 (D.C. Cir. 1986) ............................................................................... 42

El Badrawi v. DHS,
  596 F. Supp. 2d 389 (D. Conn. 2009) ................................................................ 29, 30

Fitzgibbon v. CIA,
  911 F.2d 755 (D.C. Cir. 1990) ................................................................................. 38

Gallant v. NLRB,
  26 F.3d 168 (D.C. Cir. 1994) ................................................................................... 24

Gov't Accountability Project v. Dep't of Justice,
  852 F. Supp. 2d 14 (D.D.C. 2012) ..................................................................... 32, 36

Ground Saucer Watch, Inc. v. CIA,
  692 F.2d 770 (D.C. Cir. 1981) ..................................................................... 11, 12, 14

Halpern v. Fed. Bureau of Investigation,
  181 F.3d 279 (2d Cir. 1999) ..................................................................................... 39

Hidalgo v. FBI,
   344 F.3d 1256 (D.C. Cir. 2003) ........................................................................................ 42

In re Sealed Case,
   146 F.3d 881 (D.C. Cir. 1998) .......................................................................................... 32

James v. U.S. Customs & Border Prot.,
   549 F. Supp. 2d 1 (D.D.C. 2008) ..................................................................................... 26

Johnson v. Executive Office for U.S. Attorneys,
   310 F.3d 771 (D.C. Cir. 2002) ..................................................................................... 9, 10

Judicial Watch v. Dep't of Justice,
   800 F. Supp. 2d 202 (D.D.C. 2011) ................................................................................. 32

Judicial Watch v. U.S. Dep't of Justice,
   432 F.3d 366 (D.C. Cir. 2005) .......................................................................................... 32

Judicial Watch, Inc. v. Dep't of Justice,
   20 F. Supp. 3d 260 (D.D.C. 2014) ................................................................................... 34

Kenney v. DOJ,
   603 F.Supp.2d 184 (D.D.C. 2009) ..................................................................................... 9

Keys v. U.S. Dep't of Justice,
   830 F.2d 337 (D.C. Cir. 1987) .......................................................................................... 25

LaRoche v. SEC,
   No. 05-4760, 2006 WL 2868972 (N.D. Cal. Oct. 6, 2006) .................................................. 9

Lesar v. U.S. Dep't of Justice,
   636 F.2d 472 (D.C. Cir. 1980) .......................................................................................... 39

Lewis-Bey v. U.S. Dep't of Justice,
   595 F. Supp. 2d 120 (D.C. Cir. 2009) .............................................................................. 35

Long v. OPM,
   692 F.3d 185 (2d Cir. 2012) ....................................................................................... 39, 41

Mayer Brown LLP v. IRS,
   562 F.3d 1190 (D.C. Cir. 2009) .................................................................................. 26, 27

McGehee v. CIA,
   697 F.2d 1095 (D.C. Cir. 1983) ......................................................................................... 8

Mead Data Cent., Inc. v. U.S. Dep't of Air Force,
   566 F.2d 242 (D.C. Cir. 1977) .......................................................................................... 23

Media Research Ctr. v. Dep't of Justice,
   818 F. Supp. 2d 131 (D.D.C. 2011) ................................................................................... 8

Military Audit Project v. Casey,
   656 F.2d 724 (D.C. Cir. 1981) .......................................................................................... 24

Moore v. Bush,
   601 F. Supp. 2d 6 (D.D.C. 2009) ..................................................................................... 39

Nashoba Comm'cns Ltd. P'p v. Town of Danvers,
   893 F.2d 435 (1st Cir. 1990) .............................................................................................. 9

Nation Magazine,
   71 F. 3d n.8 ....................................................................................................................... 28

Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n,
   216 F.3d 1180 (D.C. Cir. 2000) ........................................................................................ 23

Nat'l Ass'n of Retired Fed. Emps. v. Horner,
   879 F.2d 873 (D.C. Cir. 1989) .......................................................................................... 38

Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.,
    421 U.S. 132 (1975).................................................................................. 31, 35
Odland v. Fed. Energy Regulatory Comm'n,
    34 F. Supp. 3d 3 (D.D.C. 2014) ............................................................ 42
Oglesby v. Dep't of Army,
    920 F.2d 57 (D.C. Cir. 1990) ................................................... 10, 19, 21
Painting & Drywall Work Preservation Fund, Inc. v. HUD,
    936 F.2d 1300 (D.C. Cir. 1991) ............................................................ 37
Perry v. Block,
    684 F.2d 121 (D.C. Cir. 1982) .............................................................. 11
Phillippi v. CIA,
    546 F.2d 1009 (D.C. Cir. 1976) ............................................................ 28
Pickering–George v. Registration Unit, DEA/DOJ,
    553 F. Supp. 2d 3 (D.D.C.2008) ............................................................ 9
Porter v. CIA,
    778 F. Supp. 2d 60 (D. D.C. Apr. 21, 2011)........................................ 42
Pratt v. Webster,
    673 F.2d 408 (D.C. Cir. 1982) .............................................................. 25
Reed v. NLRB,
    927 F.2d 1249 (D.C. Cir. 1991) ............................................................ 38
Riccardi v. Dep't of Justice,
    32 F. Supp. 3d 59 (D.D.C. 2014) .......................................................... 10
Russell v. Dep't of the Air Force,
    682 F.2d 1045 (D.C. Cir. 1982) ............................................................ 35
SafeCard Servs., Inc. v. SEC,
    926 F.2d 1197 (D.C. Cir. 1991) ............................................................ 11
Schiller v. NLRB,
    964 F.2d 1205 (D.C. Cir. 1992) ............................................................ 32
Schrecker v. Dep't of Justice,
    349 F.3d 657 (D.C. Cir. 2003)............................................................... 10
Senate of Puerto Rico v. Dep't of Justice,
    823 F.2d 574 (4th Cir. 1987) ................................................................ 32
Shapiro v. U.S. Dep't of Justice,
    239 F. Supp. 3d 100 (D.D.C. 2017) ...................................................... 28
Shapiro v. U.S. Dep't of Justice,
    No. 16-1399 (TNM), 2018 WL 695376 (D.D.C. Feb. 1, 2018) ....... 36, 37
Sinito v. Dep't of Justice,
    176 F.3d 512 (D.C. Cir. 1999)............................................................... 42
Skelly Oil Co. v. Phillips Petrol. Co.,
    339 U.S. 667 (1950).................................................................................. 8
Smith v. ATF,
    977 F. Supp. 496 (D.D.C. 1997) ........................................................... 26
Spriggs v. Wilson,
    467 F.2d 382 (D.C. Cir. 1972).................................................................. 9
Tao v. Freeh,
    27 F.3d 635 (D.C. Cir. 1994).................................................................... 8

Tax Analysts v. IRS,
  117 F.3d 607 (D.C. Cir. 1997)..................................................................... 32, 35
Techserve Alliance v. Napolitano,
  803 F. Supp. 2d 16 (D.D.C. 2011) ...................................................................... 26
Trans-Pacific Policing Agreement v. U.S. Customs Serv.,
  177 F.3d 1022 (D.C. Cir. 1999) .......................................................................... 24
U. S. C. §§ 533, 534, and,
  Executive Order No. 12,333 ............................................................................... 25
U.S. Customs Serv.,
  802 F.2d 525 (D.C. Cir. 1986).............................................................................. 23
U.S. Dep't of Defense v. FLRA,
  510 U.S. 487 (1994)............................................................................................. 38
U.S. Dep't of Justice v. Tax Analysts,
  492 U.S. 136 (1989)............................................................................................. 23
U.S. Postal Serv.,
  147 F.3d 992 (D.C. Cir. 1998).............................................................................. 24
Valencia--Lucena v. U.S. Coast Guard,
  180 F.3d 321 (D.C. Cir. 1999) ............................................................................. 10
Vaughn v. Rosen,
  484 F.2d 820 (D.C. Cir. 1973)......................................................................... 8, 23
Vaughn v. Rosen,
  523 F.2d 1136 (D.C. Cir. 1975)............................................................................ 35
Vazquez v. U.S. Dep't of Justice,
  887 F. Supp. 2d 114 (D.D.C. 2012)..................................................................... 29
Washington v. U.S. Dep't of Labor,
  478 F. Supp. 2d 77 (D.D.C. 2007)................................................................... 8, 24
Weisberg v. Dep't of Justice,
  705 F.2d 1344 (D.C. Cir. 1983)........................................................ 10, 14, 16, 18
Weisberg v. U.S. Dep't of Justice,
  745 F.2d 1476 (D.C. Cir. 1984) ........................................................................... 10
Wilber v. CIA,
  355 F.3d. 675 (D.C. Cir. 2004) ............................................................................ 33
Williams & Connolly v. SEC,
  662 F.3d 1240 (D.C. Cir. 2011) ........................................................................... 32
Willis v. U.S. Dep't of Justice,
  581 F. Supp. 2d 57 (D.D.C. 2008) ....................................................................... 25
Wolf v. CIA,
  473 F. 3d 370 (D.C. Cir. 2007) ............................................................................ 28
Wolfe v. Dep't of Health & Human Servs.,
  839 F.2d 768 (D.C. Cir. 1988) ............................................................................. 35

## Statutes

5 U.S.C. § 552............................................................................................................ 5
5 U.S.C. § 552(a)(4)(B) ........................................................................................... 23
5 U.S.C. § 552(a)(6)(A) ........................................................................................... 33
5 U.S.C. § 552(a)(6)(A)(i) ....................................................................................... 42

5 U.S.C. § 552(b) .................................................................................................. 23, 24
5 U.S.C. § 552(b)(5) ............................................................................................... 21, 31
5 U.S.C. § 552(b)(6) .................................................................................................... 37
5 U.S.C. § 552(b)(7) .................................................................................................... 25
5 U.S.C. § 552(b)(7)(E) .......................................................................................... 26, 28
5 U.S.C. § 552(c)(1) .................................................................................................... 27
5 U.S.C. § 552(c)(2) .................................................................................................... 27
5 U.S.C. § 552(c)(3) .................................................................................................... 27
28 U. S. C. §§ 533 ...................................................................................................... 25
28 U.S.C. §2201(a) ....................................................................................................... 9
28 U.S.C. § 1651 .......................................................................................................... 5
28 U.S.C. § 2201 .......................................................................................................... 5

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................... 8

**Regulations**

28 C.F.R. § 0.85 ......................................................................................................... 25
28 C.F.R. § 16.8(b)(2) ................................................................................................. 18

## INTRODUCTION

Defendant U.S. Department of Justice ("Defendant"), on behalf of its components – the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), and the Office of Information Policy ("OIP") – and Defendant  U.S. Department of State ("State") – (collectively "Defendants"), through undersigned counsel, file this Memorandum of Points and Authorities in support of their Motion for Summary Judgment on all claims asserted by Plaintiff Juan Luciano Machado Amadis's ("Plaintiff") in this case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.

## FACTS

Defendant hereby incorporates the accompanying Statement of Material Facts Not in Genuine Dispute ("SOMF") and the exhibits thereto, including the following four declarations and their exhibits:

- **Declaration of Eric F. Stein** ("Stein Decl."), Director of the Office of Information Programs and Services ("IPS") of the U.S. Department of State, which is attached as **Exhibit 1**.

- **Declaration of Katherine L. Myrick** ("Myrick Decl."), Chief, Freedom of Information/Privacy Act Unit, ("SARF") in the FOI/Records Management Section ("SAR") of the DEA, which is attached as **Exhibit 2**.

- **Declaration of David M. Hardy** ("Hardy Decl."), Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division of the FBI, which is attached as **Exhibit 3**.

- Declaration of Vanessa R. Brinkmann ("Brinkmann Decl."), Senior Counsel in the Office of Information Policy ("OIP"), United States Department of Justice, which is attached as Exhibit 4.

## SUMMARY OF FOIA REQUESTS AND FOIA CLAIMS IN THIS ACTION

The table below lists each FOIA request identified in the First Amended Complaint [ECF 15], Plaintiff's challenges to the agency's actions regarding each FOIA request (as stated in an April 12, 2018, email exchange between counsel), and a summary of what the FOIA request seeks.

| DEA Request # | Records Sought | Plaintiff Challenges |
|---|---|---|
| 16-00541-P (Count 1) | "all records related to [plaintiff], as well as [his] entire records[sic] within the Drug Enforcement Agency" | n/a[1] |
| 17-00384-P (Count 4) | "all records, including emails, memorializing or describing the processing of [Plaintiff] previous FOIA Request No. 16-00541-P." | ▪ adequacy of the search ▪ alleged refusal to process request |
| 17-00383-P (Count 6) | "all records, including emails about [Plaintiff]." | ▪ adequacy of the search |
| **FBI Request #** | **Records Sought** | **Plaintiff Challenges** |
| 1355450-000 (Count 2) | records "regarding any/all criminal and/or drug trafficking related crimes" concerning Plaintiff | n/a |
| 1374278-000 (Count 5) | "all records, including emails and cross references, about[Plaintiff]" | ▪ adequacy of the search ▪ alleged improper refusal to amend request |
| 1374274-000 (Count 7) | "all records, including emails and search slips, memorializing or describing the processing of [Plaintiff's] previous FOIA Request Number 1355450-000." | ▪ adequacy of the search ▪ all agency withholdings |
| **State Request #** | **Records Sought** | **Plaintiff Challenges** |
| F-2016-10536 (Count 3) | records regarding "alleged criminal activities that have led to [Plaintiff's] visa revocation/denial." | ▪ adequacy of the search |
| F-2017-12067 (Count 9) | "records, including emails, memorializing or describing the processing of [Plaintiff's] previous FOIA Request No. F-2016-10536" | ▪ adequacy of the search |
| **OIP Request #** | **Records Sought** | **Plaintiff Challenges** |
| DOJ-2017-004087 (Count 8) | "records, including emails, memorializing or describing the processing of plaintiff's previous FOIA Appeal Nos. DOJ-AP-2016-005483 and DOJ-AP-2016-005644." | ▪ all withholdings ▪ determination of non-responsiveness |

---

[1] Pursuant to a July 2017 agreement between Defendants' prior counsel (AUSA Johnny Walker) and Plaintiff's counsel, if DEA and FBI did not move to "dismiss Counts 4-5 under 12(b), then [Plaintiff] [would] drop Counts 1-2."

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 322. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id.

The "vast majority" of FOIA cases are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011); Media Research Ctr. v. Dep't of Justice, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("CREW"). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. See McGehee v. CIA, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973); Media Research Ctr., 818 F. Supp. 2d at 137.

## ARGUMENTS

## I.   PLAINTIFF'S DECLARATORY JUDGMENT ACT AND THE ALL WRITS ACT CLAIMS FAIL

The Declaratory Judgment Act does not, by itself, create a basis for federal jurisdiction. Thus, a request for declaratory relief will not confer jurisdiction on the federal courts if jurisdiction would not otherwise exist. Skelly Oil Co. v. Phillips Petrol. Co., 339 U.S. 667, 671 (1950);

Nashoba Comm'cns Ltd. P'p v. Town of Danvers, 893 F.2d 435, 437 (1st Cir. 1990). Similarly, maintaining an action under the Declaratory Judgment Act in this matter depends whether an alternative legal remedy exists. The granting of declaratory relief is within the discretion of the district court and a declaratory judgment action may properly be dismissed in the exercise of that discretion. See Spriggs v. Wilson, 467 F.2d 382, 386-87 (D.C. Cir. 1972).

For the reasons set forth in this brief, Plaintiff cannot show that State, DEA, FBI, or OIP violated the FOIA; thus, in addition to failing to establish a claim under FOIA, he also fails to establish entitlement to relief under the Declaratory Judgment Act or All Writs Act. See Kenney v. DOJ, 603 F.Supp.2d 184, 190 n.4 (D.D.C. 2009) ("Because the Court finds that defendant... has not violated the FOIA, it also finds that plaintiff has no basis for obtaining a declaratory judgment against the [defendant] pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201(a)."); LaRoche v. SEC, No. 05-4760, 2006 WL 2868972, at *5 (N.D. Cal. Oct. 6, 2006) (rejecting a Declaratory Judgment Act claim in the context of a FOIA case because the plaintiff had failed to establish that the defendant had violated the FOIA statute).

Any purported claim resting on the Declaratory Judgment or All Writs Act also fails because the "comprehensiveness of FOIA" forecloses any claims purportedly brought also under these statutes. Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 777 (D.C. Cir. 2002). See Pickering–George v. Registration Unit, DEA/DOJ, 553 F. Supp. 2d 3, 4, n. 1 (D.D.C.2008) ("The exclusive nature of the FOIA precludes mandamus relief.").

## II.   STATE, DEA, AND FBI HAVE PERFORMED ADEQUATE SEARCHES

### A.   Law Regarding Adequacy of the Search

Defendants have fulfilled their respective obligations to search for records responsive to Plaintiff's FOIA requests.[2]  Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents."  Weisberg v. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  This standard of reasonableness "depends, not surprisingly, on the facts of each case."  Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  In the context of FOIA requests, "[a]n adequate search consists of a good faith, reasonable search of those systems of records likely to possess the requested information."  Id. (citing Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).  Conducting a "reasonable" search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts should attempt to micro-manage the executive branch." Schrecker v. Dep't of Justice, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002)).

The Court may grant summary judgment based on information provided in "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting Oglesby, 920 F.2d at 68) (alteration in original); see Riccardi v. Dep't of Justice, 32 F. Supp. 3d 59, 63 (D.D.C. 2014). Accordingly, the Agency's affidavits need not "set forth with meticulous documentation the details of an epic search for the requested records," but "affidavits that explain in reasonable detail the

---

[2] Plaintiff does not challenge the adequacy of the search performed by OIP; thus, OIP's search efforts are not addressed in this brief.

scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). In evaluating the adequacy of a search, courts accord agency affidavits "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted); see also Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981) (same).

### B.     State Conducted Adequate Searches

### 1.     State FOIA Request F-2016-10536 (Count 3)

By letter dated July 27, 2016, Plaintiff submitted a FOIA request to State; the request sought all records regarding "alleged criminal activities that have led to [Plaintiff's] visa revocation/denial" and claimed "[h]is visa was denied under drug trafficking charges by the U.S. Consulate in Santa Domingo." (Stein Decl. ¶ 6 & Stein Exh. 1.) Based on the nature of that request, State's Office of Information Programs and Services ("IPS") determined that the only locations reasonably likely to contain responsive records were (i) State's Bureau of Consular Affairs, (ii) the U.S. Embassy in Santo Domingo, and (iii) the State Archiving System. (Stein Decl. ¶ 19.)

The Bureau of Consular Affairs used Plaintiff's name to conduct a search in its Consular Consolidated Database ("CCD"), which holds all the current and archived data entered by consular officers from U.S. embassies around the world, including data regarding visa applications made since 1997. (Stein Decl. ¶¶ 23-24, 30.) As a result of this search, the Bureau of Consular Affairs retrieved 51 responsive documents. (Id. ¶ 31.)

For its search, the U.S. Embassy in Santo Domingo determined that the only section reasonably likely to maintain responsive records was the Consular Affairs Section. (Stein Decl. ¶

32.)  The Embassy tasked two Consular Assistants to search through the Embassy's non-immigrant visa paper files, which consist of active and pending visa matters.  (Id.)  In addition, an Information Systems Analyst searched the Embassy's entire electronic network, email accounts, and the personal folders of all relevant employees for variations of Plaintiff's name or his date of birth.  (Id. ¶ 33.)  The Embassy did not locate any responsive documents with these searches.  This result is consistent with information obtained from the Embassy's Consular Officer, who advised State that any information the Embassy may have possessed regarding Plaintiff's non-immigrant visa (if it ever had such information) would be locatable in a search of the CCD because, rather than maintain historical non-immigrant visa files in paper format, the Embassy scans the files into CCD and destroys the paper files.  (Id. ¶ 34.)

 The State Archiving System ("SAS"), commonly referred to as the "Central File," was also searched for potentially responsive records.  (Stein Decl. ¶¶ 27, 35.)  The Central File is an interface that provides access to over 40 million records created and used by various offices within State; these records include documents that discuss or define foreign policy, set precedents, or require action or use by more than one office.  (Id. ¶ 26.)  SAS generally allows State employees to conduct full-text searches of records; and, for older correspondence that is not directly text searchable, SAS will search the text of a customized reference index that directs a searcher to a full copy of the document.  (Id. ¶ 27.)  An analyst with the State's Office of Information Programs and Services ("IPS") conducted a search of the SAS using variations of Plaintiff's name, which resulted in the retrieval of two responsive documents.  (Id. ¶¶ 35-36.)

 In total, State's various searches retrieved 53 responsive records (51 from a search of CCD and 2 from SAS).  By letter dated February 3, 2017, State informed Plaintiff of the search results;

State released 32 documents in full, released 9 documents in part, and withheld 12 documents in full.  (Stein Decl. ¶ 11 & Stein Exh. 5.)

2.      **State FOIA Request F-2017-12067 (Count 9)**

By letter dated May 16, 2017, Plaintiff submitted a second FOIA request to State; the request sought "copies of all records, including emails, memorializing or describing the processing of [Plaintiff's] previous FOIA request[ to State, identified as] Request No. F-2016-10536."  (Stein Decl. ¶ 12 & Stein Exh. 5.)  Plaintiff limited the scope of the requested records to <u>exclude</u> records created before State was notified that Plaintiff had filed his District Court Complaint regarding Request No. F-2016-10536 – *i.e.*, before December 2, 2016.  (Stein Decl. ¶ 10.)  IPS determined that the only location reasonably likely to have documents responsive to Plaintiff's second FOIA request was the IPS, i.e., the Office of Information Programs and Services, because this is the office responsible for processing and responding to FOIA requests received by State.[3]  (Stein Decl. ¶ 20.)

To locate potentially responsive records, an IPS Government Information Specialist who had knowledge of Plaintiff's first FOIA request (Request No. F-2016-10536) and IPS records systems conducted a search of the IPS case management system, FREEDOMS 2 ("F2"), for all documents regarding the processing of Request No. F-2016-10536 that were created before December 2, 2016.  (Stein Decl. ¶ 37.)  The IPS Program Analyst who worked on processing Plaintiff's first request also searched IPS's government email account and the FOIA Request mailbox for any and all correspondence related to Case No. F-2016-10536, using "F-2016-10536"

---

[3] Prior to December 2, 2016, neither the Bureau of Consular Affairs nor the U.S. Embassy in Santa Domingo had been tasked with conducting a search in response to Plaintiff's first request to State (Request No. 2016-10536).  (Stein Decl. ¶ 38.)  Consequently, neither location was likely to have had documents responsive to Plaintiff's request for pre-December 2, 2016, records related to the processing of his first request.

as a search term because those records are organized by request number.  (Stein Decl. ¶ 37.)  As a result of these searches, IPS retrieved three records responsive to Request No. F-2017-12067, all of which were released in full.  (Id.)

In sum, as described in detail in the Stein Declaration, State conducted an adequate search in response to both of the FOIA requests that Plaintiff submitted to the agency.  For each FOIA request, State tasked employees with knowledge of the FOIA request and relevant records systems to conduct searches in locations reasonably likely to contain responsive records and the searches were conducted using appropriate terms and timeframes.  Consequently, State's efforts were "reasonably calculated to uncover all relevant documents" and therefore satisfy its obligations under FOIA.  See Weisberg, 705 F.2d at 1351 (an agency must undertake a search that is "reasonably calculated to uncover all relevant documents").

### C.      DEA Conducted Adequate Searches

#### 1.      DEA Case No. 16-00541-P (Count 1)[4]

While Plaintiff is no longer challenging DEA's actions with respect to this request, information about this request provides important context to understanding the DEA's processing of Plaintiff's second and third FOIA request submitted to DEA.  Thus, this section provides an overview of the search conducted regarding Request No. 16-00541-P.

By letter dated July 28, 2016, Plaintiff submitted a FOIA request to DEA; the request sought "all records related to [himself], as well as [his] entire records[sic] within the [DEA]."  (Myrick Decl. ¶ 5 & Myrick Exh. A.)  Because Plaintiff's request did not specify what he was looking for, the DEA construed the request to mean that Plaintiff was seeking DEA's investigative

---

[4] The DEA's tracking numbers for FOIA requests are called "Case Numbers", not "Request Numbers."

files about himself.  (Myrick Decl. ¶ 21.)  Such records would have been indexed in the DEA's

Investigative Reporting and Filing System ("IRFS"), which contains all administrative, general,

and investigative files compiled by DEA for law enforcement purposes.  (Myrick Decl. ¶¶ 26, 28.)

To locate responsive records, a Government Information Specialist in DEA's Freedom of

Information/Privacy Act Unit ("SARF") conducted a query of the DEA's Narcotics and Dangerous

Drugs Information System ("NADDIS"), which is the index to and the practical means by which

DEA retrieves investigative reports and information from IRFS.  The SARF specialist used

Plaintiff's name, date of birth, and social security number to search NADDIS.  (Myrick Decl.

¶ 30.)  No responsive records were located in the search.  (Id. ¶ 31.)  By letter dated September 2,

2016, Plaintiff was notified that no responsive records had been located and he had a right to appeal

the DEA's determination.  (Myrick Decl. ¶ 6& Myrick Exh. B.)[5]

## 2.    DEA Case No. 17-00383-P (Count 6)

By letter dated May16, 2017, Plaintiff submitted (via his attorney) a second FOIA request

to DEA; this request sought "copies of all records, including emails, memorializing or describing

the processing of his previous FOIA Request No. 16-00541-P."  Plaintiff limited the search to

records created before November 9, 2016, i.e., the date he filed his District Court complaint.

(Myrick Decl. ¶ 10 & Myrick Exh. E.)

DEA's SARF determined that all responsive information were reasonably likely to be

found in the DEA's Freedom of Information/Privacy Act Record System, JUSTICE-004, because

that record system possesses the records related to the agency's processing of FOIA requests.

---

[5] Plaintiff appealed DEA's response and, by letter dated September 21, 2016, DOJ's Office of
Information Policy ("OIP") acknowledged receipt of the appeal.  Plaintiff filed suit regarding this
FOIA request on November 9, 2016, resulting in OIP closing the appeal because the FOIA request
had become the subject of litigation.  (Myrick Decl. ¶¶ 7-9 & Myrick Exhs. C, D.)

(Myrick Decl. ¶ 32.)  Records can be retrieved from DEA's Freedom of Information/Privacy Act Record System using the name of the requester, the FOIA case number assigned to the request by DEA, the name of the attorney representing the requester, or the name of an individual who is the subject of the request.  (Id. ¶ 32.)  DEA's search for records yielded 12 responsive pages.  (Id. ¶ 12.)  By letter dated June 2, 2017, DEA informed Plaintiff of the search results and released all 12 pages in their entirety.  (Id. & Myrick Exh. G.)

By e-mail dated June 3, 2017, Plaintiff submitted an appeal to OIP challenging the adequacy of the searched conducted by DEA.  (Myrick Decl. ¶ 13.)  By letter dated August 16, 2017, OIP informed Plaintiff's counsel that his FOIA request was remanded back to DEA to conduct a further search for responsive records and that "[i]f DEA locate[d] additional releasable records, it [would] send them to [plaintiff] directly, subject to any applicable fees."  (Myrick Decl. ¶ 15 & Myrick Exh. J.)  On remand, using the DEA FOIA case number provided by Plaintiff's counsel, DEA conducted another search and located five additional pages of responsive materials. (Myrick Decl. ¶ 16.)  By letter dated February 27, 2018, DEA informed Plaintiff of the newly found page and released the five pages in their entirety.  (Myrick Decl. ¶ 16 & Myrick Exh. K.)

### 3.    DEA Case No. 17-00384-P (Count 4)

Finally, also by letter dated May 16, 2017, Plaintiff submitted a third FOIA request to DEA; this third FOIA request, like Plaintiff's first request, generally requested DEA records concerning Plaintiff.  Specifically, the request sought, "for copies of all records, including emails about [Plaintiff]."  (Myrick Decl. ¶ 17 & Myrick Exh. L.)  Although DEA construed this request as a duplicate of Plaintiff's prior request for information about himself, DEA ran another search for records using NADDIS and IRFS.  (Myrick Decl. ¶ 30.)  Again, no responsive records were located.  (Myrick Decl. ¶ 31.)

11

By letter dated June 8, 2017, DEA reminded Plaintiff that under his prior FOIA request (identified as DEA Case No. 16-00541-P) and based upon the information Plaintiff had provided, DEA could not locate responsive records.  (Myrick Decl. ¶ 18.)   The letter also explained to Plaintiff that he could assist the DEA in locating responsive records (if they existed) by providing additional information to DEA; the letter stated six types of information that Plaintiff could provide to be of assistance:  other names and/or aliases used by Plaintiff, any alternative dates of births, any additional Social Security Number(s) used by Plaintiff, as well as any different spellings of Plaintiff's name, a specific DEA investigative file number, and/or a specific event that the DEA participated in connection with Plaintiff.  (Myrick Decl. ¶ 19.)  By e-mail sent June 28, 2017, Plaintiff provided his Permanent Resident Card number and also stated that DEA had provided a document used for "determining visa eligibility and enforcing U.S. immigration laws" that was dated January 20, 2010.  (Myrick Decl. ¶ 20 & Myrick Exh. N.)

The information provided by Plaintiff on June 28, 2017, was of no help in locating responsive records.  In an attempt to assist Plaintiff with providing information that would permit DEA to locate responsive records (if such records existed), DEA sent Plaintiff another letter on July 12, 2017.  In the letter, DEA informed Plaintiff that (i) a Permanent Resident Card number could not be used to conduct a search for responsive records in the DEA investigative records systems; (ii) the locations searched for records were locations were DEA investigative files would reasonably found, if they existed; (iii) in addition to the six types of information DEA listed in the June 8, 2017, letter, Plaintiff could also assist in the DEA's search efforts if he provided a FBI number, a physical description of himself at the time of any interaction with U.S. law enforcement, any dates of interactions with U.S. law enforcement, or specifics regarding the nature of any offenses of which he witnessed or was suspected.  (Myrick Decl. ¶ 21 & Myrick Exh. O.)

12

The DEA's July 12, 2017, letter also referred Plaintiff to a description of the Department of Justice Privacy Act Systems of Records published by the National Archives and Records Administration's Office of Federal Register, and invited Plaintiff to identify any system he believed DEA should search for responsive records.[6]  (Myrick Decl. ¶ 22 & Myrick Exh. O.) Plaintiff never responded to DEA's second request for more information; thus, DEA was unable to conduct any other searches for the documents that Plaintiff alleges are in DEA's possession. (Myrick Decl. ¶ 22, 23.)

In summary, as described in detail in the Myrick Declaration, DEA conducted an adequate search in response to each of Plaintiff's three FOIA requests but was unable to locate any responsive documents.  DEA conducted searches for investigative files concerning Plaintiff by using information provided by Plaintiff to search locations where DEA investigative files are stored and retrieved by DEA employees in the course of performing the agency's law enforcement and other duties.  The DEA even provided Plaintiff with multiple opportunities to supplement the information originally provided in order to permit another search to be conducted but the agency never received any useful information from Plaintiff.  Because the DEA conducted searches that were reasonably calculated to locate all responsive records, the DEA has fulfilled its obligation under FOIA and is entitled to summary judgment on Plaintiff's claims challenging the adequacy of DEA's search for records.  See Weisberg, 705 F.2d at 1351 (an agency must undertake a search

---

[6] The July 12, 2017, DEA letter did not include information about Plaintiff's appeal rights because the agency had already notified Plaintiff of his appeal rights regarding this request in its final response letter of June 8, 2017.  Additionally, there was no need to again notify Plaintiff of appeal rights in the July 12, 2017, correspondence because Plaintiff had already (prematurely) filed suit regarding this FOIA request (DEA Case No. 17-00384-P) when, on July 7, 2017, Plaintiff filed a Motion for Leave to File an Amended Complaint [ECF No.  13], which included a claim against DEA regarding its response to this FOIA request.  Pursuant to DOJ Agency Rules contained at 28 C.F.R. § 16.8(b)(2), "An appeal ordinarily will not be adjudicated if the request becomes a matter of FOIA litigation."

that is "reasonably calculated to uncover all relevant documents"); see also Oglesby, 920 F.2d at 68 n.13 (rejecting an argument that a search was inadequate because it did not uncover "documents that [plaintiff] claims must exist").

### D.    FBI Conducted Adequate Searches

#### 1.    FBI Request No. 1355450-000 (Count 2)

Although Plaintiff is no longer challenging FBI's actions with respect to this request, information about this request provides important context to understanding the FBI's processing of Plaintiff's other requests submitted to FBI.  Accordingly, this section provides an overview of the search conducted.

By letter dated July 28, 2016, Plaintiff submitted a FOIA request to FBI seeking "[i]nformation regarding any/all criminal and/or drug trafficking related crimes" concerning himself.  (Hardy Decl. ¶ 5 & Hardy Decl. A).  FBI determined that its vast CRS system and its manual indices were the only locations likely to contain responsive records.  (Hardy Decl. ¶¶ 43-45, 48.)  The CRS is an extensive system of records that spans the entire FBI organization, including FBI Headquarters, Field Offices, and worldwide Legal Attaché Offices.  (Hardy Decl. ¶ 34.)  The system consists of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency.  (Hardy Decl. ¶¶ 34-35.)  FBI employees may index (and later retrieve) information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (e.g., a terrorist attack or bank robbery).  (Hardy Decl. ¶¶ 36-37.)

Using variations of Plaintiff's name, the FBI searched CRS via the following mechanisms: (i) UNI, which is the automated index of the ACS; and (ii) Sentinel, which contains all electronic records generated after July 1, 2012, and provides a second portal to the electronic indices of CRS.

(Hardy Decl. ¶¶ 43-45, 50, 52-54.)   Because Plaintiff's FOIA request included an attachment regarding his visa application that was issued in March 1990, FBI also conducted a search of FBI Headquarters' manual indices, which are index cards cataloguing pre-1995 records not searchable through electronic indices.   (Hardy Decl. ¶¶ 41, 45, 52-54.)

The FBI's search uncovered no records responsive to the Plaintiff's request.   (Hardy Decl. ¶¶ 52-54.)   By letter dated August 10, 2016, FBI informed Plaintiff that it had not located any responsive records and that, consistent with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2), the FOIA response neither confirmed nor denied the existence of his name on any watch lists.[7]   (Hardy Decl. ¶ 7 & Hardy Exh. B.)

During its review of Plaintiff's request, FBI also determined that Plaintiff's request was likely seeking a copy of his FBI identification record, commonly referred to as an Identity History Summary or "rap sheet."   (Hardy Decl. ¶ 8.)   A request for a copy of an individual's rap sheet must be made directly to the FBI's Criminal Justice Information Services ("CJIS"); however, rather simply reject Plaintiff's FOIA request and tell him to contact CJIS, RIDS referred Plaintiff's FOIA request to CJIS for further processing.   (Id. ¶¶ 7, 17-21, n.1, 49 & Hardy Exh. C.)

## 2.   FBI Request No. 1374274-000 (Count 7)

Plaintiff's second FOIA request to FBI was dated May 16, 2017 and requested "all records, including emails and search slips, memorializing or describing the processing of his previous FOIA Request No. 1355450-000."   (Hardy Decl. ¶ 22 & Hardy Exh. 22.)   RIDS determined that

---

[7] By letter dated September 22, 2016, Plaintiff submitted an appeal to OIP challenging the FBI's search and response.  (Hardy Decl. ¶ 9 & Hardy Exh. D.)  By letter dated October 13, 2016, OIP advised Plaintiff that it affirmed the FBI's action, specifically finding that FBI's search for responsive records was adequate.  (Hardy Decl. ¶ 11 & Hardy Exh. F.)  Plaintiff later filed a second appeal regarding the same FOIA request; OIP again affirmed FBI's actions regarding this request. (Hardy Decl. ¶¶ 13-16 & Hardy Exhs. H-J.)

the FBI's FOIA Document Processing System ("FDPS") would be the only location likely to contain responsive records. (Hardy Decl. ¶ 59.) FDPS is the internal repository and application utilized by RIDS to process, track, and respond to FOIA and or Privacy Act requests received by the FBI. (Id.) Thus, upon receipt of Plaintiff's May 16, 2017 request, RIDS queried FPDS for responsive records by entering the FOIA Request Number provided by plaintiff. (Id.)

By letter dated June 6, 2017, the FBI advised Plaintiff that records responsive to his request had been located and were reviewed but that the records would be withheld categorically pursuant to 5 U.S.C. § 552(b)(5)[8] and (b)(7)(E). Plaintiff's request was then closed. (Hardy Decl. ¶ 24 & Hardy Exh. R.) Plaintiff appealed the FBI's response to OIP. On September 15, 2017, OIP notified Plaintiff that it had affirmed the FBI's action on his request. (Hardy Decl. ¶ 27 & Hardy Exh. U.)

### 3. FBI Request No. 1374278-000 (Count 5)

Plaintiff's third FOIA request to FBI, dated May 16, 2017, sought "all records, including emails and cross references, about him." (Hardy Decl. ¶ 28 & Hardy Exh. V.) Plaintiff also attached "a Vaughn index . . . which states on page 2, the FBI conducted a fingerprint screening at State's request and informed State of the results on September 21, 2009."[9] (Hardy Decl. 28 & Hardy Exh. V.) By letter dated June 12, 2017, the FBI informed Plaintiff that following a search of its Central Records System, it was unable to identify main file records responsive to the FOIA. (Hardy Decl. ¶ 30 & Hardy Exh. X.) The letter also advised Plaintiff that, consistent with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2), the response neither confirmed nor denied the existence of Plaintiff's name on any watch lists. (Id.)

---

[8] After further review of the documents during the litigation stage, the FBI determined Exemption (b)(5) is no longer applicable. (Hardy Decl. ¶ 62.)

[9] The Vaughn index had been filed in the instant action as an attachment to Defendant's Motion for Summary Judgment filed May 8, 2017, see ECF 9-3, on behalf of the Department of State.

The June 12, 2017, letter to Plaintiff's counsel also stated: "If you have additional information pertaining to the subject that you believe was of investigative interest to the [FBI], please provide us with details and we will conduct an additional search."  (Hardy Decl. ¶ 30 & Hardy Exh. X.)  On June 28, 2017, Plaintiff's counsel sent an email to foipaquestions@fbi.gov providing Plaintiff's Permanent Resident Card number and requesting that an additional search be conducted.  (Hardy Decl. ¶ 31.)  On June 30, 2017, the FBI's Public Information Officer ("PIO"), advised Plaintiff's counsel that, based on the information he had provided he would "need to submit a new request for an additional search related to [his FOIA] request" to submit a new FOIA request for an additional search, as the foipaquestions@fbi.gov email address is not the proper submission method for new Freedom of Information/Privacy Act (FOIPA) requests.  (Hardy Decl. 32 & Hardy Exh. Y.)  Notably, while FBI may have offered to run an additional search, it was not obligated to do so.[10]  Moreover, to the extent that Plaintiff's FOIA Request No. 1374278-000 includes Request No. 1355450-000, the FBI's search was adequate with respect to <u>both</u> requests. (Hardy Decl. ¶¶ 52-58).

In summary, as described in detail in the Hardy Declaration, FBI conducted an adequate search in response to all three of Plaintiff's FOIA requests:   For each FOIA request, FBI tasked employees with knowledge of the FOIA request and FBI's records systems to conduct searches using information provided by Plaintiff to search for responsive paper and electronic records in locations reasonably likely to contain responsive documents.  The FBI's system of records and

---

[10] Moreover, as discussed below in Section V of this brief, had Plaintiff believed that FBI's search was inadequate and that he was entitled to have another search conducted, the proper course of action was to file an appeal to OIP challenging the FBI's actions.  Instead, Plaintiff prematurely filed suit.  On the same day that Plaintiff responded (via email) to FBI's statement that he would need to submit a new FOIA request, Plaintiff filed his Motion for Leave to File a First Amended Complaint [ECF 13], which sought to add a claim against FBI challenging its actions with respect to this FOIA request.

search techniques fully meet the standards of adequacy and reasonableness established under the FOIA.  See, e.g., Brunetti v. FBI, 357 F. Supp. 2d 97, 103 (D.D.C. 2004) (finding adequate search where FBI conducted a CRS search that produced one responsive file and noting that FBI declaration "describes in great detail the structure of the FOIA unit of the FBI and the various processes involved in implementing a search," including the CRS indices).   FBI's completion of searches reasonably calculated to uncover responsive records entitles FBI to summary judgment on each of Plaintiff's claims challenging the FBI's search in response to his FOIA requests.

## III.   FBI AND OIP HAVE PROPERLY WITHHELD RECORDS

### A.   Legal Standards for Withholding Responsive Records

FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the Act's nine exemptions.  See 5 U.S.C. § 552(b); see also U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 150–51 (1989).  The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions.  5 U.S.C. § 552(a)(4)(B); see also Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n, 216 F.3d 1180, 1190 (D.C. Cir. 2000).  An agency may meet its burden to establish the applicability of an exemption by providing a Vaughn index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." Nat'l Treas. Esps Union v. U.S. Customs Serv., 802 F.2d 525, 527 (D.C. Cir. 1986) (citing Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977); Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973)).

Additionally, although a Vaughn index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate

18

that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see alsoSpirko v. U.S. Postal Serv., 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the Vaughn index is unimportant and affidavits providing similar information can suffice.") (citing Gallant v. NLRB, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

Finally, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section."  5 U.S.C. § 552(b). The D.C. Circuit has held that district courts have an affirmative obligation to consider this issue and make segregability findings.  See Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999).

### B.    FBI Properly Withheld Records – Request No. 1374274-000 (Count 7)

Plaintiff challenges the FBI's categorical withholding of search slips and FBI's FOIA Document Processing System ("FDPS") notes pursuant to FOIA Exemption 7(E).  These withheld records were responsive to Plaintiff's second FOIA request directed to FBI (Request No. 1374274-000), which sought "all records, including emails and search slips, memorializing or describing the processing of [Plaintiff's] previous FOIA Request[, identified as FBI Request No. 1355450-000]."[11]  (Hardy Decl. ¶¶ 23-24.)  Pursuant to Exemption 7(E), FBI's response to Plaintiff's FOIA request also included a Glomar response, which stated that the FBI would not confirm or deny the existence of Plaintiff's name on any watch lists.

---

[11] As a reminder, FBI Request No. 1355450-000 requested all records regarding "criminal and/or drug trafficking related crimes" concerning Plaintiff.

1.      **Exemption 7(E)**

(a)      **Exemption 7 Threshold**

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of six specified harms.  5 U.S.C. § 552(b)(7); see Willis v. U.S. Dep't of Justice, 581 F. Supp. 2d 57, 75 (D.D.C. 2008).  When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  Keys v. U.S. Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)); see also Willis, 581 F. Supp. 2d at 75 ("As the D.C. Circuit has explained, where an agency 'specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference'" (quoting Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 32 (D.C. Cir. 1998))).  In these instances, a criminal law enforcement agency simply must show that "the nexus between the agency's activity . . . and its law enforcement duties" is "based on information sufficient to support at least 'a colorable claim' of its rationality."  Keys, 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421) (internal quotation marks omitted).

The Hardy Declaration explains how the records meet the requirement that they be compiled for law enforcement purposes:

> Pursuant to 28 U. S. C. §§ 533, 534, and Executive Order No. 12,333, as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM"), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and to further the foreign intelligence objectives of the United States.  Under this investigative authority, the responsive records herein were compiled for . . . specific law enforcement purposes[, including] the identification of, development, and implementation of law enforcement and intelligence gathering methods, techniques, procedures, and guidelines.

20

(Hardy Decl. ¶¶ 66-67.)  Clearly, the subject records were compiled for law-enforcement purposes and are subject to withholding under Exemption 7 if the other criteria thereunder are met (as described below).

**(b)**      **Application of Exemption 7(E)**

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E).  The protection afforded by Exemption 7(E) is "categorical" for information related to law enforcement techniques.  Smith v. ATF, 977 F. Supp. 496, 501 (D.D.C. 1997) (citing Fisher v. U.S. Dep't of Justice, 772 F.Supp.7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)). This exemption applies broadly and allows agencies to withhold information that "would provide insight into its investigatory or procedural techniques." Techserve Alliance v. Napolitano, 803 F. Supp. 2d 16, 28-29 (D.D.C. 2011); see also Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting that Exemption 7(E) offers "a relatively low bar for the agency to justify withholding" information).

An agency properly invokes Exemption 7(E) for investigative techniques where it demonstrates that the release could enable others to employ measures to neutralize those techniques. See, e.g., James v. U.S. Customs & Border Prot., 549 F. Supp. 2d 1, 10 (D.D.C. 2008); see also Mayer Brown LLP v. IRS, 562 F.3d 1190, 1193 (D.C. Cir. 2009) ("the importance of deterrence explains why the exemption is written in broad and general terms" and further explains why the exemption looks "not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk").  In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably

expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" Blackwell, 646 F.3d at 42 (quoting Mayer Brown, 562 F.3d at 1193). In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" Id. (quoting Mayer Brown, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

The search slips being withheld by FBI fall within the protections provided by Exemption 7(E) because they reflect sensitive investigative information and contain specific law enforcement details such as file numbers and the current status of investigations (i.e., ongoing or closed). (Hardy Decl. ¶ 69.)  Similarly, FDPS case notes are exempt from disclosure under Exemption 7(E) because they generally contain detailed information about investigations, often including the status of investigations, analysis regarding the nature of law enforcement material, analysis of whether such material can be released without revealing classified information or triggering other harms, and information about the operation and background details about an investigation.  (Hardy Decl. ¶ 70.)  These records also "contain specific, detailed information about the existence, extent, and nature of the FBI's interest in an individual."  (Hardy Decl. ¶ 71.)

The Hardy Declaration also describes why a categorical withholding, rather than simply redacting parts of the documents, is necessary:

> Disclosing even redacted versions of the documents can disclose the existence of:  an on-going criminal investigation about which the subject is unaware and which would otherwise be excludable pursuant to 5 U.S.C. § 552(c)(1); or a relationship between the FBI and the subject that would be excludable pursuant to 5 U.S.C. § 552(c)(2); or foreign intelligence, counterintelligence, or international terrorism records the existence of which is classified and excludable pursuant to 5 U.S.C. § 552(c)(3).  The very purpose of the exclusion is to keep a requester from

> knowing about a pending criminal investigation, whether an individual is an informant, or the existence of classified foreign intelligence, counterintelligence, or international terrorism records. Consequently, it is vital to the integrity of the application of exclusions that requesters not be able to deduce whether an exclusion was or was not employed in any given case.

(Hardy Decl. ¶71.)  Notably, this Court has previously acknowledged that disclosure of "information contained in . . . search slips . . . risks disclosing a 'technique' or 'procedure' that could aid in the 'circumvention of the law.'"  Shapiro v. U.S. Dep't of Justice, 239 F. Supp. 3d 100, 114 (D.D.C. 2017) (quoting 5 U.S.C. § 552(b)(7)(E) and adopting the FBI's view that "there is little meaningful difference between records compiled for law enforcement purposes and information relating to the search of those records. In both cases, knowledge of the existence or non-existence of an investigation, for example, might assist those seeking to evade detection.") Because disclosure of the requested records would impede the FBI's effectiveness and potentially aid in circumvention of law enforcement techniques if disclosed, the FBI properly withheld these requested records pursuant to Exemption 7(E).

## 2. Glomar Response

The abstract fact that a record exists or does not exist can be protected by invoking what is typically known as a Glomar response.  See Phillippi v. CIA, 546 F.2d 1009, 1011 (D.C. Cir. 1976).  Using a Glomar response, an agency "may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception."  Wolf v. CIA, 473 F. 3d 370, 374 (D.C. Cir. 2007) (internal citation omitted).  This response may only be asserted in conjunction with a FOIA Exemption that would itself preclude acknowledgment of the documents.  See Nation Magazine, 71 F. 3d at 894 n.8.

Here, consistent with FBI's general practice in responding to first party FOIA/Privacy Act requests, the FBI's response to Plaintiff's third FOIA request included a standard Glomar response

neither confirming nor denying the existence of watchlist information.  (Hardy Decl. ¶ 30 & Hardy Exh. X.)[12]  This <u>Glomar</u> response is based on FOIA Exemption 7(E).  (Hardy Decl. ¶¶ 75-76.)  In conjunction with Exemption 7(E), an agency is exempt from acknowledging the existence of materials that could, if disclosed, allow circumvention of the law.  <u>See</u>, <u>e.g.</u>, <u>Vazquez v. U.S. Dep't of Justice</u>, 887 F. Supp. 2d 114, 116 (D.D.C. 2012) (upholding <u>Glomar</u> response under Exemption 7(E) where disclosure of the existence of NCIC transactions could risk circumvention of the law); <u>El Badrawi v. DHS</u>, 596 F. Supp. 2d 389, 396 (D. Conn. 2009) (stating that the acknowledgment of whether or not a person is on a watchlist would cause the very harm that Exemption 7(E) is designed to prevent.)

FBI's use of a <u>Glomar</u> response and assertion of Exemption 7(E) is appropriate because, given the sensitive information contained in the watchlist, the mere acknowledgement of the existence or non-existence of records tending to reveal watchlist status would trigger harm.  (Hardy Decl. ¶ 77.)  Revealing this fact alone could enable the targets of the watchlist to avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use this important law enforcement technique, therefore allowing circumvention of the law.  (<u>Id.</u> ¶ 77.)  Additionally, to confirm any individual's watchlist status reasonably could be expected to compromise investigative operations as well as endanger sources and methods.  (<u>Id.</u>)  Specifically, confirming that any particular individual is, or is not listed, in the Terrorist Screening Center Database ("TSDB") could heighten an individual's suspicion, inducing him to more closely scrutinize activities and associations, which in turn would compromise highly sensitive methods and sources.  (<u>Id.</u>)  Such official confirmation could, in turn, induce an individual to flee, to destroy or hide

---

[12] FBI issued the same <u>Glomar</u> statement in response to the first and third FOIA request submitted to it; however, Plaintiff is only challenging FBI's withholdings with respect to the third FOIA request (No. 1374274-000).

evidence, to alter the behavior and conduct of his close associates, family members and friends, or to otherwise alter his own behavior so as to avoid detection by law enforcement. (Id.) Thus, the government has determined that an across-the-board Glomar response to all first-party FOIPA requests that neither confirms or denies any individual's status on any government watchlist is the best way of avoiding these harms. (Id.) Here, the FBI's Glomar response is narrow and is limited to the FBI's refusal to confirm or deny whether the information or records possessed in response to Plaintiff's request would reveal the existence of Plaintiff's name on a watchlist.

### 3.   Release of Segregable Information

With respect to responsive records and information withheld by FBI in this case, there were no reasonably segregable portions of the responsive records that could be produced, as all materials withheld were subject to the categorical protections of FOIA Exemption 7(E). (Hardy Decl. ¶¶ 61, 76-77.). The FBI has properly withheld information that would trigger reasonably foreseeable harm to one or more interests protected by the cited FOIA Exemptions and, thus, it has fulfilled its duties under the FOIA. (Id.)

### C.   OIP Properly Withheld Records – Request No. DOJ-2017-004087 (Count 8)

By letter dated May 16, 2017, Plaintiff submitted a FOIA request to OIP ("OIP Request") seeking "all records, including emails, memorializing or describing the processing of plaintiff's previous FOIA Appeal[s]," specifically:

- Appeal No. DOJ-AP-2016-005483, which identifies Plaintiff's appeal of DEA's response to DEA FOIA Case No. 16-00541-P, which sought "all records related to Plaintiff . . . within the Drug Enforcement Agency"; and

- Appeal No.: DOJ-AP-2016-005644, which identifies Plaintiff's appeal of FBI's response to FBI FOIA Request No. 1355450-000, which sought information regarding any "criminal and/or drug trafficking related crimes" concerning Plaintiff.

(Brinkmann Decl. ¶ 4 & Brinkmann Exh. A.)  By letter dated March 7, 2018, OIP provided its final response to Plaintiff.  (Brinkmann Decl. ¶ 7.)  The response noted that OIP located four pages responsive to Plaintiff's request and these four pages were appropriate for release with excisions made pursuant to Exemptions 5 and 6 of the FOIA, 5 U.S.C. § 552(b)(5), (b)(6). (Brinkmann Decl. ¶ 7 & Brinkmann Exh. B.)

## 1.    Exemption 5

FOIA Exemption 5 allows agencies to withhold "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requestors."  Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996); Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 148 (1975).  To be properly withheld under Exemption 5, "a document must ... satisfy two conditions: its source must be a government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  Dep't of Interior v. Klamath Water Users Protective Ass'n,  532 U.S. 1, 8 (2001) ("Klamath Water").  Exemption 5 encompasses the attorney-work-product privilege, the deliberative process privilege, and the attorney-client privilege.  Am. Immigration Council v. DHS, 905 F. Supp. 2d 206, 216 (D.D.C. 2012).

## (c)    Attorney-Work Product Privilege

"The attorney-work-product prong of Exemption 5 extends to 'documents and tangible things that are prepared in anticipation of litigation or for trial' by an attorney" and not routinely available. Am. Immigration Council, 905 F. Supp. 2d at 221 (quoting Fed. R. Civ. P. 26(b)(3)(A));

see also Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997); Williams & Connolly v. SEC, 662 F.3d 1240, 1243 (D.C. Cir. 2011).  The doctrine is intended to "provide[] ... a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a ... case, and prepare legal theories."  Gov't Accountability Project v. Dep't of Justice, 852 F. Supp. 2d 14, 26 (D.D.C. 2012) (citing Coastal Gas States Corp. v. Dep't of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980)). In applying the work product doctrine, the D.C. Circuit has instructed that, it "should be interpreted broadly and held largely inviolate."  Judicial Watch v. U.S. Dep't of Justice, 432 F.3d 366, 369 (D.C. Cir. 2005).

The work-product privilege encompasses documents prepared for litigation that is "foreseeable," "even if no specific claim is contemplated."  Am. Immigration Council, 905 F. Supp. 2d at 221 (citing Schiller v. NLRB, 964 F.2d 1205, 1208 (D.C. Cir. 1992)).  "Any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5."  See Judicial Watch v. Dep't of Justice, 800 F. Supp. 2d 202, 211 (D.D.C. 2011) (citing Tax Analysts, 117 F.3d at 620).  When reviewing a withholding under the work-product prong, the "'testing question' ... is 'whether, in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 586 n. 42 (4th Cir. 1987).  In this case, "the documents at issue [are] prepared by government lawyers in connection with active investigations of potential wrongdoing."  In re Sealed Case, 146 F.3d at 885.  To meet this standard, a party "must at least have had a subjective belief that litigation was a real possibility, and that belief must have

been objectively reasonable" in the circumstances.  Id. at 884 n.5.  The records in this case pass this test.

### (d)  OIP's Use of Attorney Work Product Privilege to Withhold Portions of Records

As an initial matter, all of the information protected pursuant to the attorney work-product privilege was created by DOJ attorneys as part of the administrative appeal review process.  Under the FOIA's administrative appeals provision, a FOIA requester has the right to appeal any adverse determination4 an agency makes on his or her appeal.  See 5 U.S.C. § 552(a)(6)(A).  The administrative appeals process is a critical function, which provides agencies with an additional opportunity to review their initial action taken in response to a request to determine whether corrective steps are necessary.  See, e.g., Wilber v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004).  Inasmuch as this appeals process bridges the gap between an initial adverse determination by a DOJ component and the filing of a civil lawsuit in federal district court, the administrative appeals process is a critical opportunity for the DOJ – through the work of OIP's Administrative Appeals attorneys – to review its handling of a given FOIA request before having to defend that handling in the courts.  (Brinkmann Decl. ¶ 15.)

As noted above, plaintiff's FOIA request sought records related to the adjudication of two administrative appeals:  Appeal No. AP-2016-005483 and Appeal No. AP-2016-005644.  Specifically at issue are partial redactions made by OIP to two records that were located in these respective appeal files.  This information consists of attorneys' notations contained in "Blitz Forms," which reflect evaluations, analysis, recommendations, and discussions in contemplation of the adjudication of administrative appeals.  (Brinkmann Decl. ¶ 18.)  As explained in the Brinkmann Declaration, the withheld content of the Blitz forms reflects the thoughts, impressions, legal analysis, and recommendations of DOJ's attorneys:

Appeals Staff attorneys prepare Blitz Forms to succinctly summarize the initial search and response to the FOIA request at issue in the administrative appeal, identify important issues to be taken into account during the course of the adjudication process, and provide key background information in a concise, summary format for ease of understanding and presentation to reviewing senior OIP attorneys. They then document their analysis of the merits of each appeal, flag questions or issues for further consideration, and ultimately provide recommendations to senior reviewing attorneys on proposed handling of the appeal. Often, senior reviewing attorneys will then provide their own notes or questions in a back-and-forth dialogue leading up to the final adjudication of these appeals.  As such, the attorney notations made on Blitz Forms and elsewhere in an appeal file reveal the very core of the DOJ's review of adverse FOIA determinations at this pre-litigation stage, and release of this information would directly undermine the Department of Justice's litigating position should the underlying FOIA determinations become the subject of litigation.

(Brinkmann ¶ 18.)  Notably, the administrative appeal notes Plaintiff seeks to obtain from OIP relate to the same DEA and FBI FOIA determinations challenged by Plaintiff in this litigation as Counts 1 and 2 of the First Amended Complaint.  Certainly, providing plaintiff with the Department of Justice's legal assessments on the merits of these component's actions currently before the Court would undermine the adversarial process that the attorney work-product privilege is meant to protect, by substantially impacting the DOJ's ability to now defend those actions before the court.  (Brinkmann Decl. ¶ 19.)  Clearly, the small portions of the records that were withheld by OIP fall within the attorney work-product privilege and are the epitome of the type of information that the privilege was intended to protect.

### (e)    Deliberative Process Privilege

The deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising a part of a process by which governmental decisions and policies are formulated." Judicial Watch, Inc. v. Dep't of Justice, 20 F. Supp. 3d 260, 268 (D.D.C. 2014) (quoting Klamath Water, 532 U.S. at 8).  The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'"

29

Tax Analysts, 117 F.3d at 616 (quoting Wolfe v. Dep't of Health & Human Servs., 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)).  To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process."  Lewis-Bey v. U.S. Dep't of Justice, 595 F. Supp. 2d 120, 133 (D.C. Cir. 2009) (citations omitted).

A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters."  Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).  The deliberative process privilege is thought to "prevent injury to the quality of agency decisions."  Sears, Roebuck & Co., 421 U.S. at 151.  "Such protection encourages frank discussion of policy matters, prevents premature disclosure of proposed policies, and avoids public confusion that may result from disclosure of rationales that were not ultimately grounds for agency action."  Lewis-Bey, 595 F. Supp. 2d at 133 (quoting Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).

**(f)      OIP's Use of Deliberative Process Privilege to Withhold Portions of Records**

In addition to being protected by the attorney work-product privilege, the attorney notations protected by OIP are also exempt from disclosure pursuant to the deliberative process privilege, inasmuch as these notations include preliminary assessments by attorneys about administrative appeal issues on which they have been asked to make recommendations and give advice.  Blitz forms and related notes are necessarily prepared prior to final agency action on a FOIA appeal; they consist of legal analysis and recommendations made by Administrative Appeals Staff attorneys in contemplation of the adjudication of administrative appeals.  (Brinkmann Decl. ¶ 23.) Attorney notations in the Blitz Forms such as these reflect the authors' opinions and analysis and reveal the internal deliberations of the OIP Appeals Staff as they evaluate the merits of each appeal, and whether to affirm or remand a component's initial decision on the FOIA request at issue. In

all of these instances, the protected information reveals Appeals Staff attorneys' developing, preliminary assessments about matters on which no final decision has yet been made.  (Id. ¶ 25.) Disclosure of the information at issue would severely hamper the efficient day-to-day workings of the Administrative Appeals Staff attorneys, who would no longer feel free to candidly discuss their ideas, strategies, and recommendations in Blitz Forms.  This lack of candor would seriously impair the Administrative Appeals Staff's ability to foster the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.  (Id. at 26.)

Significantly, in Shapiro v. U.S. Dep't of Justice, No. 16-1399 (TNM), 2018 WL 695376, at * 12-13 (D.D.C. Feb. 1, 2018), this Court recently upheld OIP's withholding of Blitz forms under circumstances similar to those presently before the Court.  In Shapiro, the requester sought records related to OIP's processing of his administrative appeals of three adverse determinations issued to by a DOJ component (FBI).  See id. at *3.  When processing the responsive records, OIP redacted three "Blitz" forms and one handwritten note created by its Administrative Appeals staff attorneys in the course of adjudicating the plaintiff's administrative appeal.  Id. at *12.  OIP asserted that Exemption 5's deliberative process privilege and attorney work-product privilege protected the redacted material from disclosure.  Id. at *13.  The Court upheld OIP's assertion of the deliberative process privilege, explaining that it "agree[d] with the OIP's determination that the material redacted on the three 'Blitz' forms . . . is the predecisional and deliberative process of the agency."  Id.  The Court went on to explain that "[t]he information redacted contains the impressions, analysis, and recommendation of OIP staff in their evaluation and adjudication of the adequacy of the FBI's searches.  Since these notes and comments were made during the course of the OIP's adjudication, prior to it rendering a decision on [the requester]'s appeal, the material is

31

both predecisional and deliberative, and was properly withheld." Id. The facts in this case justify the same result.

### (g)    OIP's Segregation of Non-Exempt Information

OIP carefully reviewed the portions of the two records, totaling four pages, which were withheld pursuant to the attorney work-product privilege (and deliberative process privilege). OIP determined that none of this material could be further segregated for release. The disclosure of these legal notations and the facts selected for and contained within them would undermine the core legal strategy and analysis that the privilege is meant to protect by revealing Administrative Appeals Staff attorneys' assessments of what was deemed significant in the course of determining the adjudication of administrative appeals. (Brinkmann ¶ 22.) Moreover, it is worth noting that only the portions of the Blitz Forms that reveal attorneys' thought-processes during the appeal adjudication have been withheld. Other information in these records, including administrative and logistical information regarding the initial request and appeal, and summaries of arguments presented on appeal, have been released to plaintiff. (Brinkmann ¶ 18, n.5)

### 2.    Exemption 6

Exemption 6 exempts from compelled disclosure information about individuals in "personnel and medical and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6, see Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 763 (1989), and privacy is of particular importance in the FOIA context because disclosure under FOIA is tantamount to disclosure to the public at large, see Painting & Drywall Work Preservation Fund, Inc. v. HUD, 936 F.2d 1300, 1302 (D.C. Cir. 1991). "[P]ersons involved in FBI investigations – even if they are not the subject of the investigation – have a substantial interest in seeing that their

participation remains secret." Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) (internal quotation omitted).

Exemption 6 requires an agency to balance an individual's right to privacy against the public's interest in disclosure. See Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976). The agency must determine whether disclosure of the information would threaten a protectable privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any. See Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991). The "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of FOIA,' which is contribut[ing] significantly to public understanding of the operations or activities of the government.'" U.S. Dep't of Defense v. FLRA, 510 U.S. 487, 495 (1994) (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 772 (1989). Information that does not directly reveal the operations or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Reporters Comm., 489 U.S. at 775. With respect to Exemption 6, the D.C. Circuit has made clear that "something, even a modest privacy interest, outweighs nothing every time." Nat'l Ass'n of Retired Fed. Emps. v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989). The requester bears the burden of demonstrating that the release of the withheld information would serve this interest. See Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 391–92 & nn.8 & 13 (D.C. Cir. 1987).

Here, OIP withheld only the name and phone number for one FBI employee – an individual whose role entails serving as a point of contact for discussions between OIP attorneys and the FBI. (Brinkmann Decl. ¶ 31.) This individual is not in a high-level position, nor does he or she serve as denial or determination authority for FOIA matters. (Id.) Moreover, given the sensitivity of the FBI's work and mission, identification of this individual as an FBI employee, and the access

to sensitive information afforded that position, risks this and other FBI employees being targeted by those who would undermine the critical work conducted by the FBI on a daily basis.  (Id. ¶ 32.)  In light of these factors, OIP determined that the FOIA public interest in release of this FBI employee's name is minimal.  (Id. ¶ 31.)

OIP's withholding of the FBI employee's name is supported by the fact that federal courts have long recognized that "government officials have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives," and the identities of law enforcement personnel are therefore generally exempt from disclosure.  Baez v. Dep't of Justice, 647 F.2d 1328, 1339 (D.C. Cir. 1980); see also Lesar v. U.S. Dep't of Justice, 636 F.2d 472, 487 (D.C. Cir. 1980) (FBI "agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives"); Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 296-97 (2d Cir. 1999) (identities of FBI employees properly withheld because disclosure "could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs" (quotations omitted)); Moore v. Bush, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) (same).  See also Long v. OPM, 692 F.3d 185, 194 (2d Cir. 2012) (holding that OPM properly withheld both names and duty-station information for over 800,000 federal employees in five sensitive agencies and twenty-four sensitive occupations, including, inter alia, correctional officer, U.S. Marshal, nuclear materials courier, internal revenue agent, game law enforcement, immigration inspection, customs and border interdiction, and border protection).

### 3.    Release of Segregable Information

With respect to responsive records and information withheld by OIP, the agency provided Plaintiff with all reasonably segregable portions of the responsive records.  During the processing of Plaintiff's request, OIP examined each responsive page individually to identify non-

exempt information that could be reasonably segregated from exempt information for release. (Brinkmann Decl. ¶¶ 27, 34.)

### D.    OIP Properly Determined that Certain Records Were Nonresponsive

In OIP's final response letter dated March 7, 2018, OIP identified and released in part to plaintiff a total of four pages responsive to Plaintiff's FOIA request.  Plaintiff now challenges OIP's determination that certain records that were located by OIP during its search are, in fact, not responsive to Plaintiff's FOIA request – specifically, ten pages of DEA records and five pages of FBI records that were located within the appeal files for OIP Appeal Nos. DOJ-AP-2016-005483 and DOJ-AP-2016-005644.    (Brinkmann Decl. ¶ 36.)    Plaintiff's argument regarding the responsiveness of these records is meritless.

Plaintiff's FOIA request to OIP sought "all records, including emails, memorializing or describing the processing of [Plaintiff's] previous FOIA Appeal Nos. DOJ-AP-2016-005483 and DOJ-AP-2016-005644." (Id. ¶ 36.)  Plaintiff expressly limited his request to those records created before November 9, 2016, and the request excluded "any correspondence to or from any attorney representing [plaintiff]."

An attorney on the Initial Request Staff searched for and located the appeals files that corresponded to Plaintiff's request.  Included in the appeals files were:

- the Blitz Forms created by OIP's Administrative Appeals staff, which were processed and released to Plaintiff in part;

- the initial requests made by plaintiff to DEA and FBI;

- the final response letters from DEA and FBI;

- correspondence with Plaintiff's previous attorney; and

- source material from DEA and FBI that related specifically to their processing and searching for records responsive to plaintiff's initial DEA and FBI requests.

(Brinkmann Decl. ¶ 37.)  Based on the clear, plain language of Plaintiff's request to OIP, each of these items (other than the Blitz forms) fall squarely outside Plaintiff's very narrowly tailored request for records.

Plaintiff's initial FOIA request to OIP specifically sought all records that "memorialize or describe" OIP's processing of Plaintiff's two appeals.  (Brinkmann Decl. ¶ 38 & Brinkmann Exh. A.)  The request does <u>not</u> seek all contents located in connection with the appeals files, nor does it seek records detailing the processing of Plaintiff's requests by DEA and/or FBI.  Additionally, based on the plain language of Plaintiff's OIP request, the DEA and FBI records describing those components' initial request processing cannot reasonably be construed to "memorialize or describe" OIP's processing of later-submitted FOIA appeals.  (<u>Id</u>.)  Further, the request to OIP explicitly excluded all materials dated prior to Plaintiff's filing of his District Court Complaint on November 9, 2016.  (Brinkmann Exh. A.)  The initial requests, final response letters, and correspondence with Plaintiff's prior counsel all pre-date the limitation that <u>Plaintiff</u> placed on his request.  (<u>Id</u>.)  Given these facts, OIP properly marked all records other than the Blitz forms as non-responsive to Plaintiff's FOIA request.

## IV.    PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES FOR COUNT 4 AND COUNT 5

With respect to Plaintiff's claims that DEA failed to conduct an adequate search and refused to process his FOIA request (Count 4) and Plaintiff's claim that FBI failed to perform an adequate search and to conduct a second search (Count 5), these defendants are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies.

### <u>Legal Requirement to Administratively Exhaust Remedies</u>

"FOIA's specific administrative procedures, clear deadlines for processing requests, and detailed provisions on appeal all suggest that FOIA is an administrative scheme that not only

requires exhaustion of administrative remedies, but, moreover, permits a court to dismiss a case when a plaintiff fails to exhaust his administrative remedies." Porter v. CIA, 778 F. Supp. 2d 60 (D. D.C. Apr. 21, 2011) (citing Hidalgo v. FBI, 344 F.3d 1256 (D.C. Cir. 2003); Sinito v. Dep't of Justice, 176 F.3d 512, 516 (D.C. Cir. 1999) (explaining that the FOIA requires the requester to exhaust administrative remedies).  "While the exhaustion requirement is not jurisdictional, see Hidalgo, 344 F.3d at 1259, FOIA requires exhaustion on the principle that permitting judicial review prior to exhaustion would cause premature interference with agency processes, would deny the court the benefit of the agency's expertise, and would undermine the creation of an adequate record for review." Odland v. Fed. Energy Regulatory Comm'n, 34 F. Supp. 3d 3, 14 (D.D.C. 2014).  Accordingly, a FOIA requester cannot short circuit this scheme by prematurely haling an agency into court.  "[I]t would be both contrary to orderly procedure and administration and unfair to those who are engaged in the tasks of administration to decide an issue which the [agency] never had a fair opportunity to resolve prior to being ushered into litigation." Dettman v. Dep't of Justice, 802 F.2d 1472, 1476 n.8 (D.C. Cir. 1986).

### Plaintiff Failed to Exhaust Remedies for Count 4 and Count 5

As evidenced by information provided in the Myrick Declaration and Hardy Declaration, as well as other documents in the record, DEA and FBI are entitled to summary judgment on Counts 4 and 5, respectively, because Plaintiff has failed to exhaust the required administrative process prior to seeking judicial review by this Court.

Plaintiff submitted the FOIA request in Count 4 (DEA Case No. 17-00384-P) on May 15, 2017.  (Myrick Decl. ¶ 17 & Myrick Exh. L.)  Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), both agencies had 20 days (excepting Saturdays, Sundays, and legal public holidays) after receiving the request – i.e., until June 13, 2017 – to issue a substantive response to the request.  On June 8, 2017, DEA issued its substantive response to the FOIA request, which informed Plaintiff that no responsive

records were located and Plaintiff could appeal the agency's decision to OIP.  (Myrick Decl. ¶ 18 & Myrick Exh. M.)  There is no record of Plaintiff submitting an appeal to OIP with respect to this request and Plaintiff's First Amended Complaint does not allege that he filed appealed DEA's decision.

Plaintiff also submitted the FOIA request in Count 5 (FBI Request No. 1374278-000) on May 15, 2017.  (Hardy Decl. ¶ 28 & Hardy Exh. V.)  FBI was permitted, by statute, until June 13, 2017, to issue a timely substantive response to Plaintiff's FOIA request.  The FBI issued its substantive response to the FOIA request on June 12, 2017.  (Hard Decl. ¶ 12 & Hardy Exh. X.) There is no record of Plaintiff submitting an appeal to OIP with respect to this request and Plaintiff's First Amended Complaint does not allege that he filed appealed DEA's decision.

Despite not submitting an appeal after receiving the agencies' responses, on July 7, 2017, Plaintiff filed his Motion for Leave to File an Amended Complaint, which asserted new claims challenging the DEA's actions with respect to DEA Case No. 17-00384-P and challenging FBI's actions with respect to FBI FOIA Request 1374278-000.  By circumventing the administrative process, Plaintiff has failed to comply with the legal requirements for judicial review of his FOIA claims; thus, DEA and FBI should be granted summary judgment on Counts 4 and 5, respectively.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants respectfully requests that this Court grant summary judgment in their favor on all of Plaintiff's claims.  A proposed Order is attached.

Dated: April 27, 2018          Respectfully submitted,

JESSIE K. LIU, D.C. Bar No. 472845
United States Attorney

DANIEL F. VANHORN, D.C. Bar No. 924092
Chief, Civil Division

By: /s/ *April Denise Seabrook*
APRIL DENISE SEABROOK, D.C. Bar No. 993730
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-2525
April.Seabrook@usdoj.gov

*COUNSEL FOR DEFENDANT*