## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUAN LUCIANO MACHADO AMADIS,   \*
                               \*

       Plaintiff,          \*
                               \*

       v.                 \*
                               \*   Civil Action No.  1:16-cv-02230 (TNM)

DEPARTMENT OF JUSTICE, *et al*.,   \*
                               \*

       Defendants.       \*
                               \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff respectfully moves the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting partial summary judgment in favor of Plaintiff regarding the inadequacy of the searches performed by Defendants on the grounds that no genuine issue as to any material fact exists and Plaintiff is entitled to judgment as a matter of law.

In support of this motion, the Court is respectfully referred to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Partial Summary Judgment and Plaintiff's Statement of Material Facts as to Which There Is No Genuine Dispute.

A proposed Order consistent with the relief sought also accompanies this Motion.

Date:   July 31, 2018

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JUAN LUCIANO MACHADO AMADIS,          *
                                      *
          Plaintiff,                  *
                                      *
     v.                               *
                                      *     Civil Action No.  1:16-cv-02230 (TNM)
DEPARTMENT OF JUSTICE, *et al*.,       *
                                      *
          Defendants.                 *
                                      *
*     *     *     *     *     *     *     *     *     *     *     *     *

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF**
**<u>PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND ........................................................................................1

STANDARD OF REVIEW ..........................................................................................7

ARGUMENT ..............................................................................................................10

I.       MACHADO EXHAUSTED ADMINISTRATIVE REMEDIES............................10

II.      THE AGENCIES PERFORMED INADEQUATE SEARCHES............................12

         A.       Failure to Follow Leads ....................................................................13

         B.       Improper Narrowing of Requests.....................................................17

         C.       Failure to Use Appropriate Search Terms ......................................18

         D.       Failure to Search Appropriate Systems............................................19

III.     FBI AND OIP IMPROPERLY WITHHELD RECORDS ........................................20

CONCLUSION............................................................................................................26

# TABLE OF AUTHORITIES

**Cases:**                                                                      **Pages**

*\*Afshar v. Dep't of State*, 702 F.2d 1125 (D.C. Cir. 1983) ................................................10

*Dettman v. DOJ*, 802 F.2d 1472, 1476 n.8 (D.C. Cir. 1986)................................................23

*DiBacco v. Dep't of the Army*, 795 F.3d 178 (D.C. Cir. 2015) ............................................8

*\*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) ............................................................10

*FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142 (D.C. Cir. 2015)........................24

*Hall v. CIA*, 881 F. Supp. 2d 38 (D.D.C. 2012).....................................................................8

*Hayden v. NSA/CSS*, 608 F.2d 1381 (D.C. Cir. 1979)............................................................9

*In re Sealed Case*, 146 F.3d 881 (D.C. Cir. 1998)................................................................24

*Jarvik v. CIA*, 741 F. Supp. 2d 106 (D.D.C. 2010)...............................................................10

*Jefferson v. DOJ*, 168 F. App'x 448 (D.C. Cir. 2005)...........................................................8

*\*Kowalczyk v. DOJ*, 73 F.3d 386 (D.C. Cir. 1996) .........................................................8, 13

*King v. DOJ*, 830 F.2d 210 (D.C. Cir. 1987).........................................................................9

*Maynard v. CIA*, 986 F.2d 547 (1st Cir. 1993)...................................................................8, 9

*Mead Data Ctr., Inc. v. Dep't of the Air Force*, 566 F.2d 242 (D.C. Cir. 1977)..................9

*Miller v. Casey*, 730 F.2d 773 (D.C. Cir. 1984) .................................................................17

*Miller v. Dep't of State*, 779 F.2d 1378 (8th Cir. 1985) ......................................................9

*Mobley v. CIA*, 806 F.3d 568 (D.C. Cir. 2015)......................................................................8

*Muslim Advocates v. DOJ*, 833 F. Supp. 2d 92 (D.D.C. 2011) ...........................................10

*Oglesby v. Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990) ...........................................7, 8

*PHE, Inc. v. DOJ*, 983 F.2d 248 (D.C. Cir. 1993)................................................................9

*Rosenfeld v. DOJ*, 2008 U.S. Dist. LEXIS 64620 (N.D. Cal. Aug. 22, 2008) ....................11

ii

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ...............................................8

*Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003).............................................................7

*Senate of P.R. v. DOJ*, 823 F.2d 574 (D.C. Cir. 1987).............................................................10

*United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010) .................................................24

*Weisberg v. DOJ*, 705 F.2d 1344 (D.C. Cir. 1983)................................................................8, 9

*Weisberg v. DOJ*, 745 F.2d 1476 (D.C. Cir. 1984)...................................................................7

*Weinberger v. Salfi*, 422 U.S. 749 (1975)...............................................................................23

*\*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) .........................................................................21

**INTRODUCTION**

Plaintiff Juan Machado Amadis ("Machado") brought this case against Defendants Department of Justice ("DOJ") and Department of State ("State") to obtain records under the Freedom of Information Act ("FOIA") pertaining to him and his efforts to ascertain the source of incorrect information being provided to State regarding an alleged criminal history.  (1st Am. Compl., Dkt. #15, ¶¶ 8, 15, 22, 29, 37, 47, 54, 61, 66 (filed Jan. 26, 2018).)  On 27 April 2018, Defendants filed a Motion for Summary Judgment under Rule 56(a) of the Federal Rules of Civil Procedure.  For the reasons stated herein, the Court should deny Defendants' Motion and grant Plaintiff's Cross-Motion for Partial Summary Judgment.

**FACTUAL BACKGROUND**

A brief factual recitation of Machado's reasons for seeking this information will provide some context for most of the arguments in this brief.

In December 1980, Machado was arrested in Santo Domingo, DR for allegedly smuggling cocaine into the Dominican Republic from New York.  (Machado Decl. ¶ 17, attached as Ex. A.)  After he filed a writ of habeas corpus, he was released from prison with all charges dismissed.  (*Id.* ¶ 19.)  The verdict was "auto de no ha lugar" (Verdict at 1, attached as Ex. B),[1] which in the Dominican legal system represents a judicial finding that there was absolutely no support for the accusations made against the defendant.  (Pérez Decl. ¶ 5.)  Such a verdict "is more conclusive about innocence than a finding that the evidence does not support a guilty verdict beyond a reasonable doubt, as is the norm in United States courts."  (*Id.*)

---

[1] Ex. B includes both the original Spanish document and an English translation provided by Karina Pérez, a licensed Spanish-English judicial interpreter in the Dominican Republic.  (Pérez Decl. ¶¶ 3-4, attached as Ex. C.)  Ms. Pérez is also an immigration attorney licensed to practice law in the Dominican Republic.  (*Id.*)

In April 1989, Machado was refused a visa at the U.S. Embassy in Santo Domingo.  (Ex. D at 1.)  On 14 December 1989, State informed Machado, through his counsel, that he "was found ineligible under Section 212(A)(23) of the Immigration and Nationality Act based on his arrest in 1981 in the Dominican Republic for possession of over 100 grams of cocaine and on other information available to the Department."  (*Id.*)  After Machado provided evidence to State demonstrating that this case had been dismissed, State responded on 19 March 1990, "According to information available to the Department of State, your client was arrested December 10, 1980, at the Santo Domingo Airport at which time 125 grams of cocaine was confiscated from his luggage. . . . Based on the arrest, confiscation of the narcotics and other information, it is the opinion of the Department of State that Juan Luciano Machado Amadis in [sic] ineligible to receive a visa under section 212(a)(23) of the Immigration and Nationality Act."  (*Id.* at 2.) Machado was again denied a visa on 14 February 2012, presumably on the same grounds.[2]  (*Id.*)

In July 2016, Machado submitted FOIA requests to State, the Drug Enforcement Administration ("DEA"), and the Federal Bureau of Investigation ("FBI") in an attempt to discover the source of the apparently incorrect information in government records which was causing State to deny his visa applications.  Most notably, he sought to find the source of the "information available to the Department of State [that he] was arrested December 10, 1980, at the Santo Domingo Airport at which time 125 grams of cocaine was confiscated from his luggage" (*id.* at 2), which was patently untrue.  While he was admittedly detained at the Santo Domingo Airport, he was never searched, no drugs were confiscated from his luggage, he was

---

[2] The 2012 letter cited Section 212(a)(2)(C) of the Immigration and Nationality Act (*id*. at 3), which is the section corresponding to drug trafficking which was previously known, with some differences, as Section 212(a)(23).

released, and he was not arrested until two weeks later, when police arrested him at his home. (Machado Decl. ¶¶ 11-17.)  The high number of specific inaccuracies in State's recitation, coupled with the fact that State had heavily implied that the alleged *confiscation* of the drugs played a determinative role in its reasoning (Ex. D at 2), caused Machado to believe that some record "available to the Department of State" was full of incorrect information which needed to be corrected.  Accordingly, he sought records from State, as well as from the two likely sources of this information, DEA and FBI.

State released some information to Machado and withheld some information from him under various claims of exemption.[3]  DEA and FBI each claimed that they could locate no responsive records.  When Defendants filed their first Motion for Summary Judgment on 8 May 2017, State included a *Vaughn* index addressing all of its withholdings (*Vaughn* Index, Dkt. #9-3 (filed May 8, 2017)), which included two particular pieces of information relevant to this briefing about documents it withheld in full.  First, State identified Doc. No. C06231142 as a "Fingerprint check" dated 21 September 2009 created by FBI.  (*Id.* at 17.)[4]  Second, State identified Doc. No. C06231164 as an "NIV Individual Namecheck Hit Report" dated 20 January 2010 which was jointly compiled by State and DEA and included the name of a DEA agent (presumably the co-author).  (*Id.* at 18.)

---

[3] Because Machado has agreed not to challenge the withholdings State made from the request at issue in Count 3, he will not further address these withholdings except where they provide context for other matters still in controversy.  This decision should not be construed as a concession regarding the validity of State's withholdings; it was reached solely in the interest of judicial economy to avoid duplicative argumentation, since Machado has filed another request with a broader scope with State since this case was filed.

[4] Because State included the *Vaughn* index in the same ECF filing as the accompanying Stein Declaration, pincites to this document will use the pagination assigned by the ECF system and

In an attempt to avoid unnecessary argument over the scope of his requests and what information was available to the agencies when processing the requests, Machado requested a stay to allow time for him to file and incorporate into an amended complaint new requests to DEA and FBI which specifically included references to the documents identified in the *Vaughn* index.  (*See* Dkt. #20-7 at 29 (filed Apr. 27, 2018) (DEA request); Dkt. #20-9 at 73 (filed Apr. 27, 2018) (FBI request).)  In those requests, Machado further informed DEA and FBI, "Assistant United States Attorney Johnny Walker and State's Director of the Office of Information Programs and Services Eric Stein both have personal knowledge of this document and can provide [the agency] with all the information it will need to identify this record and follow that lead to find other records about [him]," concluding that each agency "should already have been consulted about this document during State's processing of it as part of its Request No. F-2016-10536, so a copy may already be maintained in" each agency's FOIA request tracking database (SARF for DEA, FDPS for FBI).  (*See id.*)

In response to these new requests, DEA and FBI each allegedly performed a new search for responsive records, and each agency claimed that it found no responsive records.  Rather than issuing a final response, however, each agency offered to conduct another search if Machado could provide additional information.  DEA stated, "If you provide additional search criteria, we will initiate a second search for any DEA records pertaining to your client.  However, if this office does not receive any additional search criteria within 30 days, DEA will assume that you do not wish to pursue this matter and your request will be administratively closed."  (Dkt. #20-7 at 33.)  FBI stated, "If you have additional information pertaining to the subject that you believe

---

not the actual page of the index.  Therefore, a citation to page 17 corresponds to the second page of the *Vaughn* index.

was of investigative interest to the Bureau, please provide us the details and we will conduct an additional search." (Dkt. #20-9 at 86.) On 28 June 2017, Machado provided additional information to each agency as requested. (Myrick Decl., Dkt. #20-6, ¶ 20 (filed Apr. 27, 2018); Hardy Decl., Dkt. #20-8, ¶ 31 (filed Apr. 27, 2018).) On 12 July 2017, DEA conducted the promised additional search but found no records. (Myrick Decl. ¶ 21.) On 30 June 2017, FBI refused to conduct the promised additional search and instructed Machado to file a new FOIA request, to which Machado's counsel responded with a reminder of FBI's stated commitment to perform an additional search. (Hardy Decl. ¶ 32.) However, before either agency had performed the promised additional search, Machado sought leave to file his First Amended Complaint on 7 July 2017, which incorporated the new DEA and FBI requests as well as four requests for records documenting the processing of his first three requests to State, DEA, and FBI.

Before proceeding to the legal argumentation, it is important to clarify a few items regarding the scope of the issues remaining in controversy. As Defendants state, the parties have agreed to limit the issues before the Court. (Defs.' Mem. P. & A. Supp. Mot. Summ. J., Dkt. #20-2, at 2 (filed Apr. 27, 2018) [hereinafter Defs.' Mem.].) Machado hereby modifies two items in Defendants' chart and clarifies three others:

- Defendants state that Machado challenges the adequacy of State's search regarding Count 3. As noted above, Machado no longer challenges any aspect of State's processing of Count 3.

- Defendants state (by omission) that Machado does not challenge any FBI withholdings regarding Count 5. While Machado concedes that the undersigned informed Defendants' counsel on 12 April 2018 that Machado was only challenging the adequacy of FBI's search and its refusal to amend the request

(discussed below), his position has changed due to the change in FBI's position. At the time of that email exchange, FBI had not claimed that any information responsive to this request was exempt, beyond a *Glomar* response regarding watchlist information. (Dkt. #20-9 at 86.) However, when Defendants sought summary judgment, FBI made a brand new argument: "To the extent that Plaintiff's FOIA request seeks to gain access to information related to the specific transaction described in the DOS's Vaughn Index, that information would be protected in full pursuant to FOIA Exemption 7(E), as its release could reasonably be expected to risk circumvention of the law." (Hardy Decl. ¶ 57.) Accordingly, since Machado could not have reasonably expected FBI to make an exemption claim it did not raise before, he now challenges this exemption claim.

- Defendants state that Machado challenges DEA's "alleged refusal to process request" for Count 4 and FBI's "alleged improper refusal to amend request" for Count 5. These items are better understood as challenges to Defendants' claims that Machado failed to exhaust administrative remedies for these two counts (*see* Defs.' Mem. at 37-38).

- Defendants state that Machado challenges FBI's adequacy of the search and all agency withholdings regarding Count 7. Because FBI's failure to produce any records was due to a categorical withholding of all responsive records (Hardy Decl. ¶ 59), there is currently no search to challenge. Machado does, however, reserve the right to challenge the adequacy of FBI's search if the Court rejects its categorical withholding claims.

· Defendants state that Machado challenges the DOJ Office of Information Policy's ("OIP") "determination of non-responsiveness" for Count 8, adding that "Plaintiff does not challenge the adequacy of the search performed by OIP."  (*Id.* at 5 n.2.)  This mischaracterizes the nature of Machado's challenge.  OIP's improper interpretation of the scope of Machado's request to exclude responsive records as "non-responsive" is an adequacy of the search issue.  To clarify, Machado does not take issue with *where* OIP searched for records; he only objects to what records OIP *excluded* that it found there.

## STANDARD OF REVIEW

Plaintiffs largely accept Defendants' discussion of the applicable legal standards (*id.* at 3, 5-6, 18-19), but will supplement areas in which Defendants creatively style the case law to imply something that it does not actually support.

*Adequacy of the Search*

First, Defendants rely on *Weisberg v. Department of Justice* and *Oglesby v. Department of the Army* for the well-accepted rule that an agency must demonstrate that it performed "a good faith, reasonable search of those systems of records likely to possess the requested information."  (*Id.* at 5 (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citing *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).)  However, Defendants fail to further explore what these holdings actually mean and how they have been interpreted by subsequent courts.  While this Circuit did later opine that courts should be hesitant to "attempt to micro manage the executive branch" in matters regarding FOIA searches, *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003), courts have never simply deferred to agency assertions of adequacy as Defendants are asking this Court to do.  "While there is no requirement that an

agency search every record system, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Jefferson v. DOJ*, 168 F. App'x 448, 450 (D.C. Cir. 2005) (internal quotation and alteration omitted) (quoting *Oglesby*, 920 F.2d at 68). *See also Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) (only searching record systems "most likely" to contain responsive records would be inadequate) (quoting *DiBacco v. Dep't of the Army*, 795 F.3d 178, 190 (D.C. Cir. 2015), & *Oglesby*, 920 F.2d at 68).

Second, Defendants ignore the equally well-established rule that when performing a search, an agency may not "ignore what it cannot help but know" when faced with "a lead so apparent that the [agency] cannot in good faith fail to pursue it." *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996). Put into context, this means that, unlike Defendants' interpretation of the law, "evidence that relevant records have not been released may shed light on whether the agency's search was indeed inadequate." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (adding that "there may be times when an agency's inability to retrieve documents known or thought to be in its files is inherently unbelievable"); *see also Hall v. CIA*, 881 F. Supp. 2d 38, 61-62 (D.D.C. 2012) ("Where specific records . . . are referenced in [agency] documents, it is no longer 'mere speculation' that the files exist.").

Third, Defendants place too much weight on the presumption of good faith. Contrary to Defendants' implication, the "presumption of good faith" they cite so prominently (Defs.' Mem. at 6 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)) only comes into play *after* "an agency demonstrates that it has conducted a reasonably thorough search." *See Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993):

> If an agency fails to establish through reasonably detailed affidavits that its search was reasonable, the FOIA requester may avert summary judgment merely by showing that the agency might have discovered a responsive document had the

agency conducted a reasonable search.  However, if an agency demonstrates that it has conducted a reasonably thorough search, the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith.

*Id.* (citations omitted) (citing *Weisberg*, 705 F.2d at 1351, & *Miller v. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)).  If, as here, the agency fails to demonstrate that it has conducted a reasonably thorough search, the Court may not afford *any* presumption—of good or bad faith—to its declarations.

*Exemptions*

With respect to the burden facing an agency to demonstrate that information is exempt, "An agency cannot meet its statutory burden of justification by conclusory allegations of possible harm.  It must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of FOIA."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977).  "An affidavit that contains merely a 'categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.'"  *PHE, Inc. v. DOJ*, 983 F.2d 248, 250 (D.C. Cir. 1993) (quoting *King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987)).  "[T]he affidavits must show, with reasonable specificity, why the documents fall within the exemption.  The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."  *Hayden v. NSA/CSS*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (footnote omitted).  "The [D.C.] Circuit, though expressly disclaiming any attempt to provide 'an encompassing definition of *conclusory assertions*,' noted that 'it is enough that where no factual support is provided for an essential element of the claimed privilege or shield, the label *conclusory* is surely apt.'"

*Jarvik v. CIA*, 741 F. Supp. 2d 106, 120 (D.D.C. 2010) (quoting *Senate of P.R. v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987)).

Lastly, it is well-established that publicly-known information cannot be withheld pursuant to an otherwise valid exemption claim.  *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983); *Muslim Advocates v. DOJ*, 833 F. Supp. 2d 92, 99 (D.D.C. 2011) (listing cases regarding different exemptions).  However, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld."  *Id.*  This Circuit established three criteria for an item to be "officially acknowledged":

> First, the information requested must be as specific as the information previously released.  Second, the information requested must match the information previously disclosed; we noted, for example, that official disclosure did not waive the protection to be accorded information that pertained to a later time period.  Third, we held that the information requested must already have been made public through an official and documented disclosure.

*Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing *Afshar*, 702 F.2d at 1133).

## ARGUMENT

The Court should deny Defendants' Motion and grant Plaintiffs' Cross-Motion for two reasons.  First, Defendants performed inadequate searches for records responsive to Counts 4-9.  Second, Defendants failed to demonstrate that there are no genuine issues of material fact regarding their withholding of information responsive to Counts 5, 7, and 8.

## I.    MACHADO EXHAUSTED ADMINISTRATIVE REMEDIES

Before addressing the meat of the legal issues in controversy, it is first important to dispose of a simple precursor argument DEA and FBI raise in an attempt to avoid judicial review of their actions.  These agencies argue without any support that Machado was required to file

10

administrative appeals of their interim responses to Counts 4 and 5 before litigating those requests under a theory of constructive exhaustion.  (Defs.' Mem. at 37-38.)  This meritless argument can be quickly resolved.

Simply put, both DEA and FBI specifically indicated that if Machado provided further information, they *would*—not *might*—conduct additional searches.  (Dkt. #20-7 at 33 ("If you provide additional search criteria, we will initiate a second search for any DEA records pertaining to your client.); Dkt. #20-9 at 86 ("If you have additional information pertaining to the subject that you believe was of investigative interest to the Bureau, please provide us the details and we will conduct an additional search.").)  DEA even went so far as to provide a deadline for the submission of this new information, saying that if it did not receive it within thirty days, it would *then* close the request.  (Dkt. #20-7 at 33.)  In other words, these were not final responses; they were *interim* responses.  A final response is a response where the only option is to file an administrative appeal.  Defendants' argument that these responses somehow triggered an appeal requirement is frivolous, and their claim that "while FBI may have offered to run an additional search, it was not obligated to do so" (Defs.' Mem. at 17) borders on bad faith.  Machado admits that neither DEA nor FBI were obligated at the outset to offer to perform additional searches, but once they *did*, they cannot simply change their minds, like FBI did with the disingenuous suggestion that the promise that they "will conduct an additional search" actually meant that they would accept a new FOIA request.  (Hardy Decl. ¶ 30.)[5]

It is axiomatic that a requester is only required to file an administrative appeal of a *final* agency response, which, by definition, is not an *interim* response.  *See*, *e.g.*, *Rosenfeld v. DOJ*,

No. 07-3240, 2008 U.S. Dist. LEXIS 64620, at *24-25 (N.D. Cal. Aug. 22, 2008) (holding that "the particular administrative scheme requires appeal only upon a final adverse determination"). Once DEA and FBI committed that they *would* perform an additional search if provided with more information, they were required to do so before they could reach a "final adverse determination." The fact that DEA and FBI appeared to provide appeal rights in their letters despite saying that they would perform additional searches is apropos of nothing; it simply provided Machado with an option. If he wished to provide new information, the agencies would perform an additional search, but if he wished to challenge the adequacy of the searches already performed *without* providing new information, he could file an appeal. The Court should accordingly dispense with this frivolous argument.

## II.    THE AGENCIES PERFORMED INADEQUATE SEARCHES

A court can find that an agency failed to perform an adequate search for responsive records in several ways. A failure to search in locations reasonably likely to contain responsive records is an inadequate search. A failure to use appropriate search terms is an inadequate search. An overnarrow interpretation of a request to exclude responsive records is an inadequate search. A failure to follow a clear and certain lead is an inadequate search. And, even though this should never be the case, testimony which is contradicted by the record *definitely* warrants a finding that there was an inadequate search. At one time or another, Defendants have violated all of these rules.

---

[5] DEA's reliance on this argument is even more inexplicable, since that agency *did* perform an additional search as it promised, only to now bizarrely suggest that Machado should have filed an administrative appeal *before* it did so. (Defs.' Mem. at 38.)

### A.    Failure to Follow Leads

As noted above, it is well established that an agency cannot "ignore what it cannot help but know" when faced with "a lead so apparent that the [agency] cannot in good faith fail to pursue it," *Kowalczyk*, 73 F.3d at 389, yet this is exactly what DEA and FBI did in Counts 4 and 5.

The case law is currently unsettled with respect to the question of whether or not an agency must pursue leads it discovers after it has completed a search for responsive records, which is the primary reason that Machado filed the requests at issue in Counts 4 and 5 and agreed to drop his challenges to Counts 1 and 2.  When State first revealed the existence of the two records which were created in whole or in part by DEA and FBI, those agencies had already completed their respective searches for records responsive to Counts 1 and 2, meaning that any argument that they must conduct new searches in light of State's revelation would inevitably get bogged down in an argument over this question.  Instead, Machado filed new requests with DEA and FBI, in which he provided the agencies with the clear and certain leads *from the outset*, and even told the FOIA officers which DOJ and State officials would be able to identify the responsive records.  Furthermore, since it would be unusual for State to have processed those records without consulting first with DEA and/or FBI, Machado even indicated that the leads might already be in those agencies respective FOIA systems.  In other words, Machado did everything he could to draw DEA and FBI a map to the records he was seeking.

In response, DEA and FBI completely failed to follow a single one of the provided leads. DEA once again searched the same records system it searched before because it "construed [Machado's requests] as seeking DEA investigative records" (Myrick Decl. ¶ 26), even though the request letter stated, "You may not limit this request to 'investigative records maintained by

DEA' or to records located in the IRFS or NADDIS systems.  This is a request for all records, investigative or otherwise, in IRFS/NADDIS or otherwise, about my client which can be located following the clear lead presented by the attached *Vaughn* index."  (Dkt. #20-7 at 29.)  FBI again searched the Central Records System ("CRS") (Hardy Decl. ¶ 54), even though the request letter stated, "You may not limit this request to 'main file records' or to records located in the CRS. This is a request for all records, investigative or otherwise, in the CRS or otherwise, about my client which can be located following the clear lead presented by the attached *Vaughn* index." (Dkt. #20-9 at 73.)[6]  Neither search is acceptable under FOIA, for the simple reason that no serious effort was made to find the records that Machado already provided.

The above sentence refers to "no *serious* effort" instead of "no effort" because FBI appears to have made a token effort, but far less than is required by the law.  Mr. Hardy states that the Criminal Justice Information Services ("CJIS") office "advised RIDS that no fingerprint checks matching Plaintiff's name existed for that exact date and to further verify existence of additional records would require separate information from Plaintiff."  (Hardy Decl. at 15 n.7.) However, this is not an adequate search in light of the unavoidable fact that FBI *has access to the State record*.  It can review the record and determine if the date is wrong in the *Vaughn* index, if the name on the record is not an exact match, or if any other discrepancy exists which would cause CJIS not to be able to find it with a name and date search.  Moreover, it can simply *show* the State record to CJIS and say "find *this* record."  Its reason for not doing so is the product of a misguided policy that maintains that CJIS records "are not accessed via a FOIA/Privacy Act request."  (*Id.* at 4 n.1.)  FBI maintains that because DOJ has established an alternative process for requesting these records, that makes the entire system exempt from FOIA.  (*See id.*)  This is

_____

[6] Exactly how the CRS was searched is currently unclear from the record, as is discussed below.

not so.  An agency cannot unilaterally remove an entire system from FOIA—and therefore from judicial review—by setting up an alternative way to request records from it.

The reason that this issue has never been litigated is that FBI also has a practice of forwarding FOIA requests to CJIS, and most requesters are content to go through the added steps.  Machado himself would not be arguing this point if this policy had not created a perverse result beyond an added bureaucratic hoop to jump through.  However, in this particular case, FBI's policy of treating CJIS as "outside of FOIA" has caused significant problems with his FOIA request.  First, as noted above, CJIS refused to conduct a reasonable search for records about the State record, and FBI maintains that this Court cannot do anything about that because CJIS is not covered by FOIA.  However, even if the actual "rap sheet" located *in* CJIS were excluded from FOIA, records *about CJIS* are not, since they cannot be requested through the CJIS process.  In this case, Machado was not only seeking his rap sheet as FBI suggested; he was seeking information about *how it came to be provided to State*, which would never fall within the scope of a CJIS request.  Accordingly, when FBI failed to follow the clear and certain lead of the State record and find records about it, it performed an inadequate search.

However, when CJIS released Machado's rap sheet to him during the course of its own process, it created a new problem in the context of Machado's FOIA request.  A review of the relevant page from Machado's CJIS report, attached as Ex. E, reveals a startling fact: the information in CJIS which was ostensibly located by searching for records about Machado is *not about Machado*:

· Machado's name is Juan Luciano Machado.  (Machado Decl. ¶ 3.)  He has never gone by Juan Luis Machado.  (*Id.* ¶ 4.)  The CJIS report lists the subject's name as Juan Luis Machado.  (Ex. E.)

- Machado's birth date is different than the 26 October 1945 date listed on the CJIS report. (*Compare* Machado Decl. ¶ 5 *with* Ex. E.)

- Machado's alien number is different than the A19443729 number listed on the CJIS report. (*Compare* Machado Decl. ¶ 6 *with* Ex. E.)

- The CJIS report states that the subject was "arrested or received" on 28 October 1970 by the Immigration and Nationalization Service in New York and that he was put through deportation proceedings ("Dep Proc") which resulted in a Voluntary Departure ("Vol Dep"). (Ex. E.) None of this happened to Machado. (Machado Decl. ¶¶ 7-9.) He received his Lawful Permanent Residency in 1971 and kept it until approximately 1985 when he moved out of the country. (*Id.* ¶ 10.)

These discrepancies show that there is a significant filing issue regarding records about Machado at FBI, and they constitute a clear and certain lead that must be followed, in case the records which are *actually* about him are indexed under another name, such as Juan Luis Machado, or under another alien number, such as A19443729. However, because these records were located in CJIS, and because FBI refuses to consider CJIS to be covered by FOIA, FBI refuses to follow this lead, even though this discovery has the potential to completely explain all of the discrepancies in information being maintained by the various agencies. FBI maintains that it does not have to do a supplemental search of CJIS because CJIS is not covered by FOIA, and it maintains that it does not have to follow leads *found* in CJIS because the leads were not found *by the FOIA staff*.

For all of the above reasons, DEA and FBI have failed to conduct adequate searches for information responsive to Counts 4 and 5.

### B.    Improper Narrowing of Requests

One of the cardinal rules of FOIA is that agencies (and courts) are "bound to read [a request] as drafted," not as "agency officials . . . might wish it was drafted."  *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984).  For instance, as shown above, if a requester asks for all records, including emails, about himself, an agency cannot only search for investigative records located in one system.  FBI and OIP each failed to process Machado's requests as they were written.

First, Mr. Hardy states that "The FBI's searches of the CRS cover all of Plaintiff's requests, which specifically asked for main and cross reference files concerning himself" (Hardy Decl. at 14 n.6) and that its searches for records responsive to Counts 2 and 5 "did not locate any main and/or cross reference files indexed under the subject's name and subject to the FOIA." (*Id.* ¶ 45.)  Taken on its face, this declaration seems to clearly indicate that a search was performed for cross-references.  However, the processing notes for the OIP appeal of the request in Count 2 specifically indicate that FBI's search yielded "No responsive records (no main file records)."  (Ex. F at 3.)  This places Mr. Hardy's testimony at odds with contemporaneous records created by the DOJ FOIA appellate authority, which were allegedly created after reviewing "source material from . . . FBI that related specifically to the processing and searching for records responsive to plaintiff's initial . . . FBI request[ ]."  (Brinkmann Decl., Dkt. #20-10, ¶ 37 (filed Apr. 27, 2018).)  Until FBI can reconcile these two accounts, the Court cannot find that there is no genuine issue of material fact.

Second, OIP's overnarrowing of Count 8 is evident from its defense of the practice.  OIP states that the four pages it processed for release are the only records responsive to Machado's request because "OIP's 'memorialization' or 'descriptions' of the processing of a FOIA appeal is

located solely within the Administrative Appeals staff's Blitz Forms." (*Id.* ¶ 40.)  However, this characterization cannot be reconciled with OIP's other arguments, in which it states that it determined that "source material from DEA and FBI that related specifically to the processing and searching for records responsive to plaintiff's initial DEA and FBI requests" "in no way memorialize[s] or describe[s] the processing of plaintiff's appeals, nor do they include any annotations or notes which do so." (*Id.* ¶¶ 37-38.)

The chief discrepancy comes from two facts.  First, the "ten pages of DEA records and five pages of FBI records . . . were located *within the appeal files*." (*Id.* ¶ 35 (emphasis added).) Second, OIP states that the processing of appeals involves "gather[ing] background information from components regarding their handling of the subject FOIA request at the initial level [and] review[ing] and evaluat[ing] the initial component determinations in light of FOIA requesters/appellants' challenges to the components' handling of their requests." (*Id.* ¶ 16.)  Put another way, any records which show which background information was gathered from components and how those initial component determinations were characterized "describes the processing of plaintiff's appeals," even if they do not include annotations or notes.  OIP cannot have it both ways.  Either the information obtained from a component is privileged because it plays an integral part in the appeal process, or it is not pertinent to the appeal process because it does not shed any light on the appeal process.

## C.    Failure to Use Appropriate Search Terms

DEA and State each conducted impermissibly restrictive searches for records responsive to Counts 4 and 9, albeit in different ways.  Moreover, the actual nature of the searches conducted would not be apparent had Machado not obtained the processing materials as well, which highlight the conclusory and misleading nature of the Myrick and Stein Declarations.

18

In Count 4, DEA claims that "NADDIS queries were conducted by a SARF Government Information Specialist . . . using plaintiff's name[,] date of birth[,] and social security number." (Myrick Decl. ¶ 30.)  However, the search records produced in Count 6, attached as Ex. G, provide more detail, showing that not only did DEA only search for the name Juan Machado Amadis (with Machado Amadis in the last name field) (Ex. G at 3) instead of Juan Machado, Juan Amadis, or any other permutations, as the other agencies did (*see*, *e.g.*, Hardy Decl. at 16 n.8; Stein Decl., Dkt. #20-4, ¶ 33 (filed Apr. 27, 2018)), but there was *no* search by social security number, despite DEA's statement that there was.[7]  (*Compare* Myrick Decl. ¶ 30 *with* Ex. G *passim*.)

In Count 9, the FOIA analyst who processed the previous FOIA request conducted a search of their government email account and the FOIA request mailbox, but only searched for the request number, ostensibly "because the records are organized by request number."  (Stein Decl. ¶ 37.)  While this statement logically applies to the *preceding* discussed system—FREEDOMS 2, the FOIA case management system—State fails to explain why records are organized in *any* particular fashion in two *email accounts*, when email searches normally require several different search terms, not least of which are names.

### D.    Failure to Search Appropriate Systems

DEA's failure to search beyond the IRFS and NADDIS systems for records responsive to Count 3 has already been addressed above, and so will not be recapitulated here.  However, DEA and State also failed to search the appropriate systems regarding Counts 6 and 9.

---

[7] While it is true that Machado did not provide DEA with a social security number, he does have one, which he would have provided upon request.  His primary objection here is not that DEA did not conduct a search using a social security number it may not have known, but that it did not conduct that search and then filed a sworn declaration stating that it did.

In Count 6, DEA again chose one particular system to search and disregarded any parts of the request which did not fit the mold. In this request, Machado specifically requested that emails be searched, and yet DEA failed to search a single email account, limiting its search to a Privacy Act system of records which does not include emails.

In Count 9, State alleges that neither the Visa Office nor the U.S. Embassy in Santo Domingo "had been tasked to conduct searches" as of 2 December 2016, the cutoff date stipulated by Machado. (*Id.* ¶ 38.) However, not only does this not address whether or not either of those offices had been *contacted*—as opposed to "tasked to conduct searches"—it again is contradicted by contemporaneous records in the administrative processing file. In this case, a "Case Comment" was created on 9 September 2016, almost three months before the cutoff date, memorializing an exchange with Machado's attorney: "Email from requester asking for a status report. Reply mentioning that *the case is in the appropriate branch* and that an [estimated date of completion] cannot be provided at this time (reply scanned)." (Ex. H (emphasis added).) As with DEA in Count 4 and FBI in Count 5, the Court cannot find that there is no genuine issue of material fact when the sworn testimony proffered by the agency is contradicted by contemporaneous records created by the same office.

For the foregoing reasons, the Court should deny Defendants' Motion and grant Plaintiff's Cross- Motion.

## III.    FBI AND OIP IMPROPERLY WITHHELD RECORDS

In this case, FBI invoked two categorical exemptions instead of releasing all reasonably segregable material, while OIP withheld normal business records under a theory of FOIA appeals that has never been recognized by a court.

Regarding Count 5, FBI offers for the first time an alternate theory for why it failed to locate any records about the document it provided to State; it claims that any such information would be categorically exempt under Exemption (b)(7)(E).  (Hardy Decl. ¶ 57.)  However, it is not necessary to address FBI's claims regarding this particular exemption in any great detail, because its ability to withhold this information has already been precluded.  "[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's *otherwise valid exemption claim*."  *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (emphasis added).  The information in this record has already been officially disclosed twice to Machado, first in 1989 and then in more detail in 1990.

When State informed Machado, "According to information available to the Department of State, your client was arrested December 10, 1980, at the Santo Domingo Airport at which time 125 grams of cocaine was confiscated from his luggage" (Ex. D at 2), that was an official disclosure of the fact that a government agency had that information.  When State admitted in this case that it withheld a record created by DEA and another record created by FBI, that was an official disclosure that the information came from one of those two agencies.  When DEA proffered sworn testimony that it had no records about Machado, that was an official disclosure that the information came from FBI.  When FBI cited State's claims about the FBI document with approval (Hardy Decl. ¶ 57), that was an official disclosure that FBI adopted State's characterization of the document.  Therefore, while *some* of FBI's information "about the specific transaction described in DOS's Vaughn Index" (*id.*) may remain exempt under Exemption (b)(7)(E), part of it must be released under the prior official disclosure doctrine.

21

FBI's categorical exemption to withhold all of the processing notes from Count 7 fails for a different reason. In that instance, while Machado admits that FBI has the policy described in the Hardy Declaration, the records in question simply do not fall within the scope of it.

As Mr. Hardy states, the FBI policy in question states that FBI will "categorically deny all search slips and other search records for requests that result in a No Records response citing Exemption (b)(7)(E)." (*Id.* ¶ 61.) By his own words, "it applies to search slips and other search records (e.g. FDPS Notes regarding searches) created in responding to FOIA or Privacy Act requests for investigative files/records." (*Id.*) Assuming *arguendo* that this policy is proper under FOIA, it would apply partially at best to Count 7, where the processing materials being requested pertained to multiple topics, of which search was only one. (*Id.* ¶ 70 ("FDPS case notes are employee-generated notations location within the FBI's processing system used to document the action taken on FOIA/Privacy Act requests received by the FBI."). Until FBI provides testimony that there are *no* processing materials responsive to Count 7 which do not pertain to searches, the Court cannot condone a categorical withholding of all responsive records because *some* are exempt.

OIP, for its part, simply claims Exemption (b)(5) protection for information which is neither predecisional nor deliberative, let alone protected attorney work product. In fact, the attorney work product privilege claim is quite illustrative of the overreach of DOJ in this case.

When arguing that Machado did not administratively exhaust Counts 4 and 5, Defendants tout the salutary role played by administrative appeals in the FOIA framework. Skipping the appeal stage "would be both contrary to orderly procedure and administration and unfair to those who are engaged in the tasks of administration to decide an issue which the [agency] never had a fair opportunity to resolve prior to being ushered into litigation." (Defs.' Mem. at 37 (quoting

*Dettman v. DOJ*, 802 F.2d 1472, 1476 n.8 (D.C. Cir. 1986)).)  The Supreme Court has also

extolled the virtues of the appeal process, stating that it enables the agency to "function

efficiently" and to "have an opportunity to correct its own errors," "afford[ing] the parties and

the courts the benefit of its experience and expertise," and "compil[ing] a record which is

adequate for judicial review."  *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).  In short, the

purpose of a FOIA appeals process is to give the agency a chance to make sure that it is

processing FOIA requests properly and lawfully.

Despite the overwhelming support for this argument, OIP maintains that the purpose of

an appeals staff is significantly different.  "As the final step before litigation ensues, the

administrative appeals process therefore ensures that the Department is in its best litigating

position on FOIA matters."  (Brinkmann Decl. ¶ 15.)  "The appeals process is viewed as a means

to ensure that the DOJ is in the best position possible if and when its actions must be defended in

court."  (*Id.* ¶ 20.)  "OIP attorneys adjudicate appeals with this ultimate goal in mind, and are

cognizant that litigation is the next recourse should requesters remain dissatisfied with the DOJ's

response."  (*Id.*)

Most interestingly, OIP manages to argue on one page that "[t]he administrative appeals

process further ensures that the DOJ compiles an adequate record for judicial review, should

litigation ensue" (*id.* ¶ 15), while arguing later that "providing plaintiff with the Department of

Justice's legal assessments on the merits of these component's actions currently before the Court

would undermine the adversarial process that the attorney work-product privilege is meant to

protect, by substantially impacting the DOJ's ability to now defend those actions before the

court."  (*Id.* ¶ 19.)

The disconnect is jarring.  On the one hand, OIP holds itself out as the office responsible for making sure that DOJ components properly process FOIA requests, while on the other hand it insists that it should not be required to release its assessments of those components' actions because then it might compromise its ability to defend the improper ones.  Simply put, attorneys who adjudicating FOIA appeals do not create records during the course of their adjudication "in anticipation of litigation."  *FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015).

When considering whether a document is prepared "in anticipation of litigation," this Circuit employs a "because of" test, inquiring "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010) (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)). Although a document that "would have been created 'in substantially similar form' regardless of the litigation" is not protected by the privilege, *Boehringer*, 778 F.3d at 149 (quoting *Deloitte*, 610 F.3d at 138), a document may be protected by the privilege "even though it serves multiple purposes, so long as [it] was prepared because of the prospect of litigation." *Deloitte*, 610 F.3d at 138.  Because the job description of a FOIA appeal adjudicator is to *adjudicate FOIA appeals* and not to prepare the agency for litigation, it cannot be argued that these Blitz Forms are prepared "because of the prospect of litigation."  They are prepared because requesters file administrative appeals of FOIA requests and the agency is required by statute to adjudicate them.

Similarly, a simple review of the Blitz Forms released by OIP belies the argument that the redacted material is predecisional and deliberative.  OIP leans heavily on the claim that these Blitz Forms are allegedly prepared by Appeals Staff attorneys for presentation to senior OIP

attorneys (Brinkmann Decl. ¶ 23), but the forms themselves tell a different story, in which the Appeals Staff attorneys who write the Blitz Forms are the *de facto* final decisionmakers.  In each of Blitz Form, the boxes provided for "Reviewer Comments" and "Attorney Follow-Up to Reviewer Comments" are blank (Ex. F at 2, 4), indicating the absence of "back-and-forth dialogue with their DOJ colleagues throughout this process."  (Brinkmann Decl. ¶ 16.) However, this argument would fall flat if OIP attorneys communicated on these matters outside of Blitz Forms, but OIP has foreclosed that argument as well with its insistence that "OIP's 'memorialization' or 'descriptions' of the processing of a FOIA appeal is located *solely* within the Administrative Appeals staff's Blitz Forms."  (*Id.* ¶ 40.)  If there are no other records documenting anything that happened during the processing of these two appeals, and there is no evidence that anyone reviewed and/or provided feedback on these two Blitz Forms, then OIP has failed to demonstrate the lack of a genuine issue of material fact regarding the allegedly privileged nature of the withheld information.[8]

Furthermore, OIP has not even attempted to offer evidence that the release of the withheld information would create a foreseeable harm, as is now required by the FOIA statute.  5 U.S.C. § 552(a)(8)(A)(i)(I) (agency must demonstrate that it "reasonably foresees that disclosure would harm an interest protected by an exemption").  By that token alone, it has failed to demonstrate its entitlement to summary judgment.

---

[8] However, should the Court remain unconvinced, it should simply review the four redacted pages *in camera* and judge for itself if these forms reflect the sort of "comprehensive legal review" (Brinkmann Decl. ¶ 16) of "the substance of the many legal and policy issues being examined in each administrative appeal" (*id.* ¶ 24) that OIP characterizes them as.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion for Summary

Judgment and grant Plaintiff's Cross-Motion for Partial Summary Judgment.

Date:   July 31, 2018

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUAN LUCIANO MACHADO AMADIS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No.  1:16-cv-02230 (TNM) |
| DEPARTMENT OF JUSTICE, *et al*., | * | |
| | * | |
| Defendants. | * | |
| | * | |

*     *     *     *     *     *     *     *     *     *     *     *     *

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## <u>AS TO WHICH THERE IS NO GENUINE DISPUTE</u>

Pursuant to Local Rule 7(h), Plaintiff Juan Machado Amadis ("Machado") submits this response to Statement of Material Facts As To Which There Is No Genuine Dispute.

1.      On 27 July 2016, Machado submitted a FOIA request to the Department of State ("State") which was assigned Request No. F-2016-10536.  (Stein Decl. ¶ 6.)

2.      On 16 May 2017, Machado submitted a FOIA request to the Drug Enforcement Administration ("DEA") which was assigned Request No. 17-00384-P.  (Myrick Decl. ¶ 17.)

3.      On 16 May 2017, Machado submitted a FOIA request to the Federal Bureau of Investigation ("FBI") which was assigned Request No. 1374278-000.  (Hardy Decl. ¶ 28.)

4.      On 16 May 2017, Machado submitted a FOIA request to DEA which was assigned Request No. 17-00383-P.  (Myrick Decl. ¶ 10.)

5.      On 16 May 2017, Machado submitted a FOIA request to FBI which was assigned Request No. 1374274-000.  (Hardy Decl. ¶ 22.)

6.      On 16 May 2017, Machado submitted a FOIA request to the Department of Justice Office of Information Policy which was assigned Request No. DOJ-2017-004087. (Brinkmann Decl. ¶ 4.)

7.      On 16 May 2017, Machado submitted a FOIA request to State which was assigned Request No. F-2017-12067.  (Stein Decl. ¶ 13.)

Date:   July 31, 2018

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

2