# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JUAN LUCIANO MACHADO AMADIS**,

Plaintiff,

v.

**DEPARTMENT OF JUSTICE**, *et al.*

Defendants.

Case No. 1:16-cv-2230 (TNM)

## <u>MEMORANDUM OPINION</u>

Plaintiff Juan Luciano Machado Amadis sues the U.S. Department of Justice ("DOJ") and the U.S. Department of State ("State") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). He also seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651. At issue are Government's responses to Mr. Amadis's requests for documents about State's decision to deny his visa applications based on events that occurred nearly four decades ago.

Mr. Amadis alleges that State and DOJ's components—the Drug Enforcement Agency ("DEA") and the Federal Bureau of Investigation ("FBI")—conducted inadequate searches in response to his FOIA requests. He also contends that the FBI and DOJ's Office of Information Policy ("OIP") improperly withheld records. Before the Court is the Government's Motion for Summary Judgment and Mr. Amadis's Cross-Motion for Partial Summary Judgment. For the reasons given below, the Court will grant summary judgment to the Government and deny Mr. Amadis's cross-motion.

# I.      BACKGROUND

Juan Luciano Machado Amadis is a Dominican citizen who lives in Santo Domingo, Dominican Republic.  Am. Compl., ECF No. 15, ¶ 3.  In 1989, he was denied a visa by the U.S. Embassy in Santo Domingo.  Cross Mot. for Summ. J., Ex. D, ECF No. 31-4, p. 1.  State explained that Mr. Amadis was inadmissible under Section 212(a) of the Immigration and Nationality Act because he had been arrested for possession of over 100 grams of cocaine.  *Id.*  Section 212 allows State to refuse visas to persons who it has reason to believe "is or has been" a drug trafficker.  *Id.* at 2.  The cocaine charge, however, was dismissed, *see* Cross Mot. for Summ. J., Ex. B, ECF No. 31-2, pp. 4–5, and Mr. Amadis provided evidence to State that he had no conviction record, Cross Mot. for Summ. J., Ex. D, ECF No. 31-4, p. 2.

State again found Mr. Amadis ineligible for a visa under Section 212(a) in 1990.  Cross Mot. for Summ. J., Ex. D, ECF No. 31-4, p. 2.  It explained that while Mr. Amadis "has no conviction record . . . this does not address whether or not he was arrested," and Section 212(a) does not require a conviction for State to make an ineligibility finding.  *Id.*  "According to information available to [State], [Mr. Amadis] was arrested December 10, 1980, at the Santo Domingo Airport at which time 125 grams of cocaine was confiscated from his luggage."  *Id.*  In 2012, Mr. Amadis again applied for a visa, and for a third time, State refused his request.  *Id.* at 3.  State cited Section 212(a)(2)(C) of the Immigration and Nationality Act, which makes known and suspected drug traffickers inadmissible, *see* 8 U.S.C. § 1182(a)(2)(C).  *Id.*

Mr. Amadis maintains that State is misinformed.  He acknowledges that on December 10, 1980, he flew from New York to Santo Domingo where local authorities detained him on suspicion of drug trafficking.  Cross Mot. for Summ. J., Ex. A, ECF No. 31-1, ¶¶ 11, 13, 17.  But he claims that he was never searched for drugs, no drugs were confiscated from his luggage, and

he was only arrested two weeks later at his home. *Id.* ¶¶ 11–17. Even though his own version of events would likely justify a visa denial under Section 212, Mr. Amadis filed FOIA requests with State, the FBI, and the DEA hoping to determine the basis for State's decisions denying his visa applications.

First, Mr. Amadis submitted a FOIA request to State for records "regarding alleged criminal activities that have led to his visa revocation/denial" ("First State Request"). *See* Stein Decl. Ex. 1, ECF No. 20-5, p. 1. After searching its Consular Consolidated Database, the Consular Affairs Section of the U.S. Embassy in Santo Domingo, and State Archiving System, State retrieved 53 responsive records. Stein Decl., ECF No. 20-4, ¶¶ 11, 29–36. State informed Mr. Amadis of the search results, and it released 32 documents in full, released 9 documents in part, and withheld 12 documents in full. *Id.* ¶ 11; Stein Decl. Ex. 4, ECF No. 20-5, p. 22.

Next, Mr. Amadis submitted a FOIA request to the DEA for "all records related to [himself], as well as [his] entire record[] within the [DEA]" ("First DEA Request"). Myrick Decl. Ex. A, ECF No. 20-7, p. 2. Given the request's breadth, the DEA construed Mr. Amadis to be seeking the DEA's investigative files about himself. Myrick Decl., ECF No. 20-6, ¶ 26. After searching its Investigative Reporting and Filing System and its Narcotics and Dangerous Drugs Information System, the DEA found no responsive records. *Id.* ¶¶ 30–31. The DEA informed Mr. Amadis of its search results by letter. *Id.* ¶ 6.[1]

Finally, Mr. Amadis submitted a FOIA request to the FBI for "[i]nformation regarding any/all criminal and/or drug trafficking related crimes" about himself ("First FBI Request"). Hardy Decl., ECF No. 20-8, ¶5; Hardy Decl. Ex. A, ECF No. 20-9, p. 2. The FBI searched its Central Records System, and because Mr. Amadis's FOIA request included an attachment about

---

[1] Mr. Amadis appealed the DEA's response, but OIP closed the appeal because Mr. Amadis's First DEA Request became part of the current suit. Myrick Decl., ECF No. 20-6, ¶¶ 7–9.

his 1990 visa application, the FBI searched its manual indices, index cards cataloguing pre-1995 records not searchable through electronic indices. Hardy Decl., ECF No. 20-8, ¶¶ 41, 43–45, 50, 52–54. The FBI informed Mr. Amadis that it uncovered no responsive records and stated that its FOIA response "neither confirms nor denies the existence of [Mr. Amadis's] name on any watch lists." *See* Hardy Decl. Ex. B, ECF No. 20-9, p. 8 (citing FOIA exemption (b)(7)(E)).[2] Because the FBI determined that Mr. Amadis was likely seeking a copy of his FBI identification records ("rap sheet"), it referred his First FBI Request to its Criminal Justice Information Services ("CJIS") for processing. Hardy Decl., ECF No. 20-8, ¶¶ 7–8. Generally, a person must request a copy of his or her rap sheet directly from CJIS. *Id.* ¶ 8, n.1.[3]

Dissatisfied with the agencies' search results, Mr. Amadis filed six new FOIA requests. He requested that each agency provide records "memorializing or describing the processing" of his previous FOIA requests (Count VI-"Second DEA Request," Count VII-"Second FBI Request," and Count IX-"Second State Request"). He also sought "all records, including emails, memorializing or describing the processing" of the appeals of his First DEA Request and First FBI Request from OIP (Count VIII-"OIP Request"). Finally, he renewed his attempts to find the information causing State to deny his visa requests. He requested that the DEA disclose "copies of all records, including emails, about him[self]" (Count IV-"Third DEA Request"). And he requested that the FBI provide "all records, including emails and cross references, about him[self]" (Count V-"Third FBI Request"). These six FOIA requests are the basis for this action.

---

[2] Mr. Amadis administratively appealed the FBI's search and response to OIP. Hardy Decl., ECF No. 20-8, ¶ 9. OIP affirmed the FBI's actions, finding that the FBI's search was adequate. *Id.* ¶ 11. Mr. Amadis filed a second appeal with OIP, but OIP again affirmed the FBI's actions. *Id.* ¶¶ 12–16.

[3] These three initial requests were the bases for Counts I–III of Mr. Amadis's Amended Complaint. *See* Am. Compl., ECF No. 15, ¶¶ 7–27. Mr. Amadis, however, abandoned those claims. *See* Cross Mot. for Summ. J., ECF No. 31, pp. 3 n. 3, 5, 13.

## II.    LEGAL STANDARD

Under FOIA, agencies must conduct "a good faith effort to [] search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (*Oglesby I*).  FOIA also requires agencies "to comply with requests to make their records available to the public, unless the requested records fit within one or more of nine categories of exempt material.  *Oglesby v. U.S. Dept. of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (*Oglesby II*).  The "vast majority" of FOIA cases are resolved on motions for summary judgment.  *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

A party moving for summary judgment must show an absence of a genuine issue of material fact—a fact that "might affect the outcome of the suit under governing law."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "In the FOIA context, a district court reviewing a motion for summary judgment conducts a *de novo* review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under FOIA."  *Pinson v. Dep't of Justice*, 160 F. Supp. 3d 285, 292 (D.D.C. 2016).  So a court may grant summary judgment to an agency only if it can establish that any withheld document falls into one of the enumerated exemptions, *see* 5 U.S.C. § 552(a)(4)(B), and its search was reasonably calculated to uncover all relevant documents, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).

## III.    ANALYSIS

### A.  *Mr. Amadis has waived his claims under the Declaratory Judgment Act and the All Writs Act fail.*

In their motion for summary judgment, DOJ and State argued that Mr. Amadis's claims under the Declaratory Judgment Act and the All Writs Act fail for two reasons.  First, they

argued that a request for declaratory relief does not confer jurisdiction on the federal courts if jurisdiction would not otherwise exist. *See Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950). And since Mr. Amadis's underlying FOIA claims fail, he also cannot establish entitlement to relief under the Declaratory Judgment Act. *See* Def. Mot. for Summ. J., ECF No. 20-2, p. 11 (citing *Kenney v. U.S. Dep't of Justice*, 603 F. Supp. 2d 184, 190 n. 4 (D.D.C. 2009)). Second, they claimed that "the 'comprehensiveness of FOIA' forecloses any claims purportedly also brought under [the Declaratory Judgment Act or the All Writs Act]." *Id.* (citing *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002)).

Mr. Amadis, however, did not address the Defendant's arguments in his opposition. *See* Cross Mot. for Summ. J., ECF No. 31. And "it is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Davis v. Transp. Sec. Admin.*, 264 F. Supp. 3d 6, 10 (D.D.C. 2017) (cleaned up). So the Court treats the Government's arguments about the Declaratory Judgment Act and the All Writs Act as conceded and grants its motion for summary judgment on those claims.

### B. *Mr. Amadis has failed to exhaust administrative remedies for his Third DEA Request and his Third FBI Request.*

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby I*, 920 F.2d at 61. In the FOIA context, exhaustion is not jurisdictional, but "as a jurisprudential doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar.'" *Hidalgo v. FBI*, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003) (citing *Oglesby I*, 920 F.2d at 61). And "FOIA's specific administrative procedures, clear deadlines for

processing requests, and detailed provisions on appeal all suggest that FOIA is an administrative scheme that not only requires exhaustion of administrative remedies, but, moreover, permits a court to dismiss a case when a plaintiff fails to exhaust his administrative remedies." *Porter v. CIA*, 778 F. Supp. 2d 60, 68 (D.D.C. 2011).

An agency generally must substantively respond to a request within 20 working days to trigger FOIA's administrative exhaustion requirement. *See* 5 U.S.C. § 552(a)(6)(A); *Oglesby I*, 920 F.2d at 62–64. The agency must at least: "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Responsibility & Ethics in Wash.* ("*CREW*") *v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013). Once the agency has issued such a determination, "the requester must exhaust his administrative remedies before seeking judicial review." *Oglesby I*, 920 F.2d at 64.

On May 16, 2017, Mr. Amadis submitted his Third DEA Request. Myrick Decl., ECF No. 20-6, ¶ 17; Myrick Decl. Ex. L, ECF No. 20-7, p. 29. He sought "copies of all records, including emails, about him[self]." *Id.* That same day, he also submitted his Third FBI Request, seeking "copies of all records, including emails and cross-references, about him[self]." *See* Hardy Decl. Ex. V, ECF No. 20-9, p. 73. So the DEA and the FBI needed to issue a determination on Mr. Amadis's requests by June 14, 2017. *See* 5 U.S.C. § 552(a)(6)(A). They did so.

The DEA issued its determination on June 8. The DEA explained that "[t]o search for responsive records, [it] queried the DEA Investigative Reporting[] and Filing System." Myrick Decl. Ex. M, ECF No. 20-7, p. 32. But after trying to "gather and review" responsive

documents, the DEA could not locate any.  *Id.*  So the DEA "communicate[d] the scope of the documents it intend[ed] to produce"—none—and the reason therefor—they could not locate responsive documents.  *See CREW*, 711 F.3d at 188.  Finally, the DEA told Mr. Amadis how he could administratively appeal its adverse decision and that he could contact the DEA's FOIA Public Liaison for further assistance.  Myrick Decl. Ex. M, ECF No. 20-7, p. 32.

The FBI responded two days before the deadline.  It informed Mr. Amadis that "[b]ased on the information you provided, [it] conducted a search of the Central Records System," but the FBI was "unable to identify main file records responsive to the FOIA."  *See* Hardy Decl. Ex. X, ECF No. 20-9, p. 86.  And it issued a *Glomar* response, neither confirming nor denying the existence of Mr. Amadis's name on any watch lists.  *Id.*  The FBI also informed Mr. Amadis that he could appeal its adverse decision to OIP.

Thus, both the DEA and the FBI issued adverse determinations as defined by *CREW*, 711 F.3d at 188.  *See also Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 95 (D.D.C. 2013) ("A response is sufficient for purposes of requiring an administrative appeal if it includes the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse.") (cleaned up).  Both complied with Mr. Amadis's request and conducted a search, trying to "gather and review" responsive documents.  Both determined and communicated the scope of the records they intended to produce—none.  And they explained the reason for the scope of their disclosure—they found no responsive records.  The FBI also suggested that to whatever extent it may have found responsive documents they were withheld under Exemption 7(E) or 5 U.S.C. § 552(c).  Both agencies also told Mr. Amadis that he could appeal their adverse determinations.  And because both agencies issued their determinations

within 20 working days of receiving the requests, FOIA's administrative exhaustion requirements were triggered.

Mr. Amadis, however, appealed neither decision to OIP before amending his Complaint to add his Third DEA Request and Third FBI Request. He concedes as much. But he argues that the agencies' responses did not trigger the administrative exhaustion requirement. Mr. Amadis reasons that because the DEA and the FBI offered to conduct additional searches if he submitted more information, the agencies' respective responses were not final "determinations" under *CREW* and 5 U.S.C. § 552(a)(6)(A). And he therefore constructively exhausted his administrative remedies under 5 U.S.C. § 552(a)(6)(C).

Not so. As described above, when an agency informs a requester that it has complied with a request but has located no responsive records, that is a determination, and such a determination is susceptible to immediate administrative appeal. The agency is not "simply decid[ing] to decide later." *See CREW*, 711 F.3d at 186. It has rendered an adverse decision and given its basis therefor. FOIA requires no more to trigger the administrative exhaustion requirement. *See* 5 U.S.C. § 552(a)(6)(A); *CREW*, 711 F.3d 180; *Nat'l Sec. Counselors*, 931 F. Supp. 2d at 95.

An agency's offer to conduct an "additional" search does not alter the final, appealable nature of its determination. Instead, it allows a requester additional process that is not required by FOIA. But this courtesy offer to do more than FOIA requires does not vitiate the administrative exhaustion requirement. "[I]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *CREW,* 711 F.3d at 189–190. Conversely, an agency that does comply with FOIA's timelines does not forfeit its ability to invoke the

administrative exhaustion requirement merely because it offered a requester more than he was legally entitled. To hold otherwise would discourage agencies from trying to accommodate FOIA requesters and pervert the intent of the FOIA.

Even if a requester submits more information so that the agency can conduct another search, as Mr. Amadis did, the agency's original timely determination remains appealable. The requester has two options. If the requester wishes to submit more information, the he gets a second bite at the FOIA apple at the agency level. All the while he retains his ability to seek recourse through an agency appeal and may invoke that right at any time. This ability to appeal at any time ameliorates *CREW*'s concern that agencies might "desire to keep FOIA requests bottled up in limbo for months or years on end." *Id.* at 187. If the requester is unsatisfied with the additional search, either procedurally or substantively, he has all that he needs to appeal. But Mr. Amadis seeks to create a third option by preemptively retreating to court. That door is shut.

Ultimately, the agencies' letters fulfilled FOIA's requirements to trigger the administrative exhaustion requirement. And the agencies' offers to provide additional process that is not required by the statute does not convert their final determinations to merely "interim." Thus, because Mr. Amadis failed to appeal the DEA and the FBI's decisions to OIP, he has not exhausted his administrative remedies. The DOJ is entitled to summary judgment on these claims.

### C. The DEA conducted an adequate search for documents in response to Mr. Amadis's Second DEA Request.

On May 16, 2017, Mr. Amadis submitted his Second DEA Request. Myrick Decl., ECF No. 20-6, ¶ 10; Myrick Decl. Ex. E, ECF No. 20-7, p. 12. He sought "copies of all records,

including emails, memorializing or describing the processing" of his First DEA Request.  *Id.*

Mr. Amadis limited the search to records created before November 9, 2016.  *Id.*

The DEA's Freedom of Information/Privacy Act Unit determined that all responsive

information was reasonably likely to be in the DEA's Freedom of Information/Privacy Act

Records System, JUSTICE-004.  *See* Myrick Decl., ECF No. 20-6, ¶ 32.  The DEA can retrieve

records from JUSTICE-004 using the name of the requester, the FOIA case number that the DEA

assigned to the request, the name of the attorney representing the requester, or the name of an

individual who is the subject of the request.  *Id.*  The DEA found 12 responsive pages, which it

released in their entirety to Mr. Amadis.  *Id.* ¶ 12; Myrick Decl. Ex. G, ECF No. 20-7, p. 17.

Mr. Amadis, however, appealed to OIP, challenging the adequacy of the DEA's search.

Myrick Decl., ECF No. 20-6, ¶ 13.  OIP remanded the request to the DEA, and the DEA

conducted another search.  *Id.* ¶¶ 15–16.  The additional search turned up five more pages of

responsive materials, and the DEA released all five pages in their entirety to Mr. Amadis.  *Id.*

¶ 16.

Mr. Amadis continues to challenge the adequacy of the DEA's search.  In his briefing, he

complains that the DEA conducted no separate search of agency email accounts in response to

his request.  *See* Cross Mot. for Summ. J., ECF No. 31, p. 20.  But Katheryn Myrick, the Chief

Freedom of Information/Privacy Act Unit at the DEA, explained that the DEA determined that

*all* responsive information, including relevant emails, was reasonably likely to be in JUSTICE-

004.  *See* Myrick Decl., ECF No. 20-6, ¶ 32.

FOIA requires agencies to undertake searches that are "reasonably calculated to uncover

all relevant documents."  *Weisburg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir.

1983).  "An agency has discretion to craft its search to meet this standard and does not have to

search every system if additional searches are unlikely to produce any marginal return." *Shapiro v. U.S. Dep't of Justice*, 293 F. Supp. 3d 99, 108 (D.D.C. 2018) (*Shapiro II*). The DEA was not separately required to comb through employee emails when it had reasonably determined that any email relevant to the processing of Mr. Amadis's initial FOIA request would be in JUSTICE-004.

"[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). The DEA "searched the computer database that most likely would identify responsive records. Nothing more is required." *Gillam v. U.S. Dep't of Justice*, 236 F. Supp. 3d 259, 265 (D.D.C. 2017) (cleaned up).

### D. The FBI's Response to Mr. Amadis's Second FBI Request properly withheld search slips and case notes. [4]

Mr. Amadis's Second FBI Request sought "all records, including emails and search slips, memorializing or describing the processing" of his First FBI Request. *See* Hardy Decl., ECF No. 20-8, ¶ 22; Hardy Decl. Ex. P, ECF No. 20-9, pp. 51–53. The FBI determined that its FOIA Document Processing System ("FDPS") was the only location likely to contain responsive records. *See* Hardy Decl., ECF No. 20-8, ¶ 59. FDPS is the FBI's system for processing, tracking, and responding to FOIA and Privacy Act requests. *Id.* The FBI searched FDPS using the FOIA Request Number that Mr. Amadis provided. *Id.*

The FBI located responsive records but decided to withhold the records categorically under 5 U.S.C. § 552(b)(7)(E). [5] The FBI informed Mr. Amadis of its decision and closed the

---

[4] Mr. Amadis clarifies in his cross-motion that he is challenging only the FBI's withholdings. *See* Cross Mot. for Summ. J., ECF No. 31 p. 6.

[5] The FBI initially withheld records under 5 U.S.C. § 552(b)(5) as well, but it subsequently determined that Exemption (b)(5) does not apply. *See* Mot. for Summ. J, ECF No. 20-2, p. 16 n. 8.

request.  Hardy Decl., ECF No. 20-8, ¶ 24; Hardy Decl. Ex. R, ECF No. 20-9, p. 59.  When Mr.

Amadis appealed the FBI's decision to OIP, OIP affirmed the FBI's action.  Hardy Decl., ECF

No. 20-8, ¶ 27; Hardy Decl. Ex. U, ECF No. 20-9, p. 68–69.  But Mr. Amadis still claims that

the FBI's categorical withholding of search slips and FDPS processing notes is improper.

Not so.  Mr. Amadis's First FBI Request sought all records for "criminal and/or drug

trafficking related crimes" about him.  Hardy Decl., ECF No. 20-8, ¶ 5.  The FBI issued a "No

Records" response and refused to confirm or deny whether Mr. Amadis was listed on any watch

lists under Exemption (b)(7)(E).  *See* Hardy Decl. Ex. B, ECF No. 20-9, p. 8.  Requesters put the

FBI in an untenable position when they seek search slips and FDPS case notes about such

responses:

> [The FBI] cannot simply deny that the search slip exists because
> search slips are created as a matter of course.  It cannot release the
> search slip, which even in redacted form would likely reveal the
> existence of the file that the FBI told the requester did not exist.  And
> it cannot withhold the entire search slip under one of the exemptions,
> because the withholding itself would 'tip off' the requester that the
> search slip must refer to a file that he or she had previously been told
> did not exist.

*Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 112 (D.D.C. 2017) (cleaned up) ("*Shapiro

I*").  So courts allow the FBI to withhold search slips from "No Records" responses under

Exemption 7(E).  *See id.* at 111–16.  The FBI has created a "standard policy to categorically

deny all search slips and other search records for requests that result in a No Records response

citing Exemption (b)(7)(E)."  *See* Hardy Decl., ECF No. 20-8, ¶ 61.

Exemption 7(E) permits an agency to withhold "records or information compiled for law

enforcement purposes" if the production of such records "would disclose techniques and

procedures for law enforcement investigations or prosecutions, or would disclose guidelines for

law enforcement investigations or prosecutions if such disclosure could reasonably be expected

to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). When a law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987). Indeed, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding," because it need only "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (cleaned up). And the FBI has cleared that bar for the search slips and case notes at issue. *See generally*, Hardy Decl., ECF No. 20-8, ¶¶ 67–74.

"[S]earch slips, FDPS case notes, and other search material gathered in response to requests under the FOIA are derived/complied from and/or reflect information that would revel FBI criminal investigations and/or national security files." *Id.* ¶ 67. And search slips "reflect sensitive investigative information and contain specific law enforcement details such as file numbers and the current status of investigations." *Id.* ¶ 69. "The same holds true for FDPS case notes." *Id.* ¶ 70. Indeed, "there is little meaningful difference between records compiled for law enforcement purposes and information relating to the search of those records." *Shapiro I*, 239 F. Supp. 3d at 114.

Mr. Amadis does not challenge the FBI's policy. Cross Mot. for Summ. J., ECF No. 31, p. 28. Instead, Mr. Amadis argues that the policy "would apply partially at best to [his Second FBI Request], where the processing materials being requested pertained to multiple topics, of which search was only one." *Id.* Thus, Mr. Amadis argued that "[u]ntil FBI provides testimony that there are *no* processing materials responsive to [his Second FBI Request] which do not

14

pertain to searches, the Court cannot condone a withholding of all responsive records because *some* are exempt." *Id.* (emphasis in original)

In response, the FBI submitted a third declaration from Mr. Hardy asserting:

> The records responsive to this request were reviewed and determined to be categorically withheld pursuant to FOIA Exemption 7(E). Within the Second Hardy Declaration [ECF No. 20-8 ¶¶ 63-77], the FBI provided a thorough description of the types of documents located in response to this request, the reasoning for categorically withholding the information, and the risks that could occur if this information is processed and released to Plaintiff. In addition to the notes and search slips, the FBI maintains all correspondence sent from and to Plaintiff, which Plaintiff already has in his possession. *There are no additional processing materials responsive to [Mr. Amadis's Second FBI Request] . . . that do not pertain to the FBI's searches.*

Third Hardy Decl., ECF No. 39-1, ¶ 24 (emphasis added). Apparently satisfied with the FBI's response, Mr. Amadis did not object again to the FBI's withholding in his surreply. Thus, because the FBI withheld only records related to its search that produced a "No Records"/*Glomar* response, it properly withheld those records under Exemption 7(E). *See Shapiro I*, 239 F. Supp. 3d at 111–16.

### E.  *OIP properly determined that certain records were nonresponsive to Mr. Amadis's OIP Request*

Mr. Amadis submitted his OIP Request seeking "all records, including emails, memorializing or describing the processing of [his] previous FOIA Appeal[s]," specifically: (1) his appeal of his First DEA Request, which had sought "all records related to Plaintiff . . . within the [DEA]"; and (2) his appeal of the FBI's response to his First FBI Request, which sought information about him and any "criminal and/or drug trafficking related crimes." *See* Brinkmann Decl. Ex. A, ECF No. 20-11, p. 2. Mr. Amadis limited his request to records created before

November 9, 2016. *Id.* OIP responded with four pages responsive to Mr. Amadis's request. *See* Brinkmann Decl., ECF No. 20-10, ¶ 7; Brinkmann Decl. Ex. B, ECF No. 20-11, pp. 4–5.

During its search, OIP also located ten pages of DEA records and five pages of FBI records in the appeal files. Brinkmann Decl., ECF No. 20-10, ¶ 37. These records related to the DEA and the FBI's initial processing and searches for records responsive to Mr. Amadis's requests. *Id.* OIP determined that the records were not responsive to Mr. Amadis's request to the agency, because the records did not "memorialize" or "describe" OIP's processing of Mr. Amadis's appeals. *Id.* ¶ 38. But Mr. Amadis complains that OIP improperly narrowed his FOIA request.

The plain language of Mr. Amadis's FOIA request, however, does not encompass DEA and FBI records in his appeals file. "Agencies must read and interpret a FOIA request as it was drafted, not as either an agency official or the requester might wish it was drafted." *Wilson v. U.S. Dep't of Treasury*, 730 F. Supp. 2d 140, 155 (D.D.C. 2010) (cleaned up). True, agencies have a "duty to construe . . . FOIA request[s] liberally," *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), but requests must also "'reasonably describe' the records requested," *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) (quoting 5 U.S.C. § 552(a)(3)). So agencies "need not expand their searches beyond the four corners of the request, nor are they required to divine a requester's intent." *Am. Chemistry Council, Inc. v. U.S. Dep't of Health and Human Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (cleaned up).

Mr. Amadis's request to OIP was for "all records . . . memorializing or describing" OIP's processing of his two appeals. He did not seek all records in his appeals files. Nor did he specifically request records about the DEA and the FBI's processing of his initial requests.

Indeed, that information was the subject of his Second DEA Request and Second FBI Request. *See supra* at Section III-C and III-D. The DEA and the FBI's processing records cannot reasonably be construed as "memorializing or describing" OIP's processing of later submitted appeals. Nor can Mr. Amadis's request fairly be read to ask for "*any records* which show which background information was gathered from components and how those initial component determinations were characterized." Cross Mot. for Summ. J., ECF No. 31, p. 24 (emphasis added).

Instead, if, for example, OIP had created a list of the records it received from the FBI and the DEA while processing Mr. Amadis's appeals, that list would be responsive because it memorializes or describes OIP's processing of the appeal. But the listed records themselves memorialize or describe only the prior work by the FBI and the DEA, not OIP's processing of the appeal. OIP did not have to go outside the four corners of Mr. Amadis's specific request for materials that evidenced OIP's work on processing his appeals. *See Am. Chemistry Council*, 922 F. Supp. 2d at 62. So OIP reasonably determined that the 15 pages of DEA and FBI records in the appeals files were not responsive.

F. *OIP properly withheld portions of records responsive to Mr. Amadis's OIP Request under Exemptions 5 and 6*

OIP located four pages responsive to Mr. Amadis's request for "all records, including emails, memorializing or describing the processing of [his] previous FOIA Appeal[s]." *See* Brinkmann Decl., ECF No. 20-10, ¶ 7; Brinkmann Decl. Ex. B, ECF No. 20-11, pp. 4–5. The responsive records are "Blitz Forms," which OIP attorneys use to process appeals. Brinkmann Decl., ECF No. 20-10, ¶¶ 9, 18. While OIP determined that the Blitz Forms were appropriate for release, it withheld portions of them. *Id.* ¶ 9. Citing Exemption 6, 5 U.S.C. § 552(b)(6), OIP withheld the name and phone number of an FBI employee who served as a point of contact for

discussions between OIP attorneys and the FBI. *Id.* ¶¶ 28, 31. Citing Exemption 5, 5 U.S.C. § 552(b)(5), OIP withheld portions of the Blitz Forms titled "Discussion," "Search Notes," and "Recommendation." *See* Cross Mot. for Summ. J., Ex. F, ECF No. 31-6, pp. 1–4. Mr. Amadis challenges OIP's redactions, but they were proper.

First, Mr. Amadis has conceded that OIP appropriately withheld the FBI employee's information under Exemption 6. In its motion for summary judgment, DOJ explained why withholding the FBI employee's personal information was proper under Exemption 6. Mot. for Summ. J., ECF No. 20-2, pp. 32–34. Mr. Amadis's response to DOJ's motion for summary judgment, however, did not address the agency's arguments or even mention OIP's withholding of the FBI employee's information. *See* Cross Mot. for Summ. J., ECF No. 31. As already discussed, "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Davis*, 264 F. Supp. 3d at 10. The Court thus treats DOJ's arguments that its withholdings under Exemption 6 were proper as conceded.

Moreover, OIP properly withheld its attorneys' notes and recommendations on the Blitz Forms under Exemption 5. FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, the exemption covers records that would "normally [be] privileged in the civil discovery context," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), such as the attorney-client privilege, the attorney work-product

doctrine, and the executive deliberative process privilege, *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).

The deliberative process privilege protects intra- or inter-agency documents that reflect "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. U.S. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008). And it serves at least three policy purposes. First, it "protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772 (D.C. Cir. 1978). "Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon." *Id.* at 772–73. Third, "it protects the integrity of the decision-making process itself by confirming that officials would be judged by what they decided, not for matters they considered before making up their minds." *Id.* at 773 (cleaned up). But the deliberative process privilege "shields only government 'materials which are both predecisional and deliberative." *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997).

The deliberative process privilege attaches to the portions of Blitz Forms at issue. In *Shapiro II*, OIP similarly withheld the "Search Notes," "Discussion," and "Recommendations" portions of Blitz Forms under Exemption 5. *See Shapiro II*, Docket No. 16-cv-01399, ECF No. 13-6, pp. 31–36. The court noted that the "information redacted contains the impressions, analysis, and recommendation of OIP staff in their evaluation and adjudication of the adequacy of the FBI's searches." *Shapiro II*, 293 F. Supp. 3d at 117. And it accordingly determined that because "these notes and comments were made during the course of the OIP's adjudication, prior

to it rendering a decision on [the plaintiff's] appeal, the material is both predecisional and deliberative, and was properly withheld." *Id.*

So too here. The redacted information at issue reflects OIP's attorneys' "evaluations, analysis, recommendations, and discussions in contemplation of the adjudication of [Mr. Amadis's] administrative appeals." Brinkmann Decl., ECF No. 20-10, ¶ 18. Indeed, Blitz Forms are prepared by front-line attorneys to "succinctly summarize the initial search and response to the FOIA request at issue in the administrative appeal, identify important issues to be taken into account during the course of the adjudication process, and provide key background information in a concise, summary format for ease of understanding and presentation to reviewing senior OIP attorneys." *Id.* That information is both predecisional and deliberative, and properly withheld under Exemption 5. *See Shapiro II,* 293 F. Supp. 3d at 117.

Indeed, this type of initial evaluation and up-the-chain recommendation is exactly what the deliberative process privilege protects. "[A]t least four inter-related factors may be gleaned from the case law as significant in making the fact-specific determination that a responsive document is properly withheld under the deliberative process privilege." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F. Supp. 3d 260, 269 (D.D.C. 2014). First, "courts determine whether a document is predecisional by looking at the time of the document's release relative to the date the decision is made." *Id.* "Second, courts look to the relationship between the author and recipient of the document to determine whether a person in the author's position, particularly a subordinate, would typically provide advice to a person in the recipient's position as part of the decision-making process." *Id.* at 270. "Third, courts assess the nature of the discussion in the challenged document and, specifically, whether it sets out the author's view of options and considerations regarding an agency's policy or, rather, explains or expresses the policy itself."

*Id.* at 271. "Finally, courts inquire as to whether the document was responsive to a request, particularly a request from a senior official with decision-making authority to a subordinate in an advisory position." *Id.* at 272.

The Blitz Forms check at least three of these four boxes. They were generated before any final decision was made on Mr. Amadis's appeals. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (finding "a document predecisional if it was generated before the adoption of an agency policy") (cleaned up). They were prepared by front-line OIP attorneys to be submitted to reviewing senior OIP attorneys, *see* Brinkmann Decl., ECF No. 20-10, ¶ 18. *Compare Schlefer v. United States*, 702 F.2d 233, 238 (D.C. Cir. 1983) ("Intra-agency memoranda from 'subordinate' to 'superior' on an agency ladder are likely to be more 'deliberative' in character than documents emanating from superior to subordinate."). The redacted portions include the front-line attorneys' "evaluations, analysis, recommendations, and discussions in contemplation of the adjudication of [Mr. Amadis's] administrative appeals," *see* Brinkmann Decl., ECF No. 20-10, ¶ 18. *Compare Coastal States*, 617 F.2d at 866 (deliberative documents included "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"). And while there is no evidence that the front-line attorneys received specific requests from their supervisors, Ms. Brinkmann's declaration shows that the front-line attorneys generally are tasked with initial reviews as a matter of OIP practice and policy. *See* Brinkmann Decl., ECF No. 20-10, ¶¶ 16, 18.

Mr. Amadis retorts that boxes on the Blitz Forms for "Reviewer Comments" and "Attorney Follow-Up to Reviewer Comments" are blank. Cross Mot. for Summ. J., ECF No. 31, p. 31. He accordingly reasons that the attorneys who write the Blitz Forms are the *de facto* final

decisionmakers.  In essence, Mr. Amadis argues that the Blitz Forms represent final agency decisions.  But the fact that the supervisors reviewing the front-line attorneys' Blitz Forms did not have additional comments does not show that the front-line attorneys were granted decision-making authority, and Mr. Amadis has cited no authority to the contrary.  The supervisors may have simply agreed with their subordinates or disagreed without comment.  Indeed, at least one of the Blitz Forms that the Court held OIP properly withheld in *Shapiro II* also had blank "Reviewer Comments" and "Attorney Follow-Up to Reviewer Comments" boxes.  *See Shapiro II*, Docket No. 16-cv-01399, ECF No. 13-6, pp. 31–36.

Nor do to the blank boxes undercut OIP's stated purpose for the redacted information.  That a supervisor had no comments does not undermine OIP's statement that the redacted boxes allow front-line attorneys to provide analysis and recommendations to senior reviewing attorneys leading up to the final adjudication of the appeal, *see* Brinkmann Decl., ECF No. 20-10, ¶¶ 16, 18.  Courts have recognized that when documents are created to provide legal advice, that further confirms that the records are deliberative.  *See Judicial Watch*, 20 F. Supp. 3d at 274–75 (citing *Brinton v. U.S. Dep't of State*, 636 F.2d at 602 (D.C. Cir. 1980)).  And, again, OIP has shown that the redacted portions of the Blitz Forms include legal advice.  *See* Brinkmann Decl., ECF No. 20-10, ¶¶ 15–16, 18.

Mr. Amadis also argues that "OIP has not even attempted to offer evidence that the release of the withheld information would create a foreseeable harm."  Cross Mot. for Summ. J., ECF No. 31, p. 31.  Not so.  Ms. Brinkmann explained that disclosing the information at issue would have a chilling effect on OIP Administrative Appeals Staff attorneys, who would no longer feel able to discuss their idea, strategies, and recommendations in Blitz Forms freely.  *See* Brinkmann Decl., ECF No. 20-10, ¶¶ 21, 26.  This is among the harms that Exemption 5 seeks to

prevent. *See Jordan*, 591 F.2d at 772–73. Thus, the notes and comments at issue are both predecisional and deliberative and were properly withheld under Exemption 5.

### G. *State conducted an adequate search in response to Mr. Amadis Second State Request*

Mr. Amadis submitted his Second State Request seeking "copies of all records, including emails, memorializing or describing the processing" of his First State Request. Stein Decl., ECF No. 20-4, ¶ 12; Stein Decl. Ex. 5, ECF No. 20-5, p. 23. Mr. Amadis limited the scope of the request to records created before State knew that he had filed his complaint in district court about his earlier FOIA request– before December 2, 2016. Stein Decl., ECF No. 20-4, ¶¶ 10, 37. State searched for responsive documents and discovered three, all of which State released in full. *Id.* ¶ 14.

Mr. Amadis complains that State conducted an inadequate search in response to his Second State Request. Am. Compl., ECF No. 15, ¶¶ 65–69. But State's search was reasonably calculated to uncover all relevant documents. It therefore fulfilled its obligations under FOIA. *See Valencia-Lucena*, 180 F.3d at 325.

State searched where responsive documents were reasonably likely to be found. State determined that its Office of Information Programs and Services was most likely to have responsive documents, because it is responsible for processing and responding to FOIA requests. Stein Decl., ECF No. 20-4, ¶¶ 4, 20. What is more, State wisely assigned the search to employees familiar with Mr. Amadis's earlier request. *Id.* ¶ 37. A State Government Information Specialist with knowledge of Mr. Amadis's first FOIA request and State's records systems searched the agency's case management system, FREEDOMS 2. *Id.*

And State searched in several databases using criteria unique to Mr. Amadis's past request reasonably likely to return responsive records. It tasked the analyst who had worked on

processing Mr. Amadis's first request to search his government email account and the FOIA request mailbox for all correspondence related to Mr. Amadis's First State Request. *Id.* He conducted his search using the case number assigned to Mr. Amadis's First State Request. *Id.* State retrieved three responsive records and released all three in full. *Id.* ¶ 14.

Still, Mr. Amadis claims that State's search was inadequate. First, he argues that contemporaneous records in the administrative processing file contradict State's claim that neither the Visa Office nor the U.S. Embassy in Santo Domingo had been tasked to conduct searches as of December 2, 2016. Second, he claims that it was insufficient for State to search government email accounts and its FOIA request mailbox using the case number for his First State Request. Neither argument has merit.

First, Eric Stein, Director of IPS, unambiguously stated that the Visa Office and the U.S. Embassy in Santo Domingo "would have no records responsive" to Mr. Amadis's request, because as of December 2, 2016, State had not tasked either with conducting searches. *Id.* ¶ 38. "Where an agency affidavit avers that a reasonable search was conducted, the agency is entitled to a presumption of good faith," and "[a] plaintiff cannot rebut the good faith presumption that attaches to an agency's affidavit 'through purely speculative claims about the existence and discoverability of other documents.'" *Veterans for a Strong Am. v. U.S. Dep't of State*, 211 F. Supp. 3d 182, 191 (D.D.C. 2016) (quoting *Brown v. U.S. Dep't of Justice*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010)). But speculation is all that Mr. Amadis has to offer.

To rebut Mr. Stein's averment, Mr. Amadis points to an email sent by an employee at State's FOIA Requester Service Center that stated:

> Our records indicate that on August 29, 2016, the Requester Communications Branch sent you an official reply acknowledging receipt of your FOIA request and assigning FOIA case number F-2016-10536 to it. Your FOIA request has been assigned to the

> appropriate compliance research branch for action. Currently we
> are determining if we have sufficient information to process your
> search and ensure we are able to protect personal identifiable
> information.

Stein Decl. Ex. 2, ECF No. 20-5, p. 17. According to Mr. Amadis, State's statement that it had

assigned his request to "the appropriate compliance research branch" creates a genuine issue of

fact whether the Visa Office and the U.S. Embassy had been tasked with conducting a search as

of August 2016.

Not so. That statement does not support an inference that the Visa Office or Embassy

had become involved in the search. Courts must give nonmovants the benefit of all *reasonable*

inferences, not all possible inferences. *See Anderson*, 477 U.S. at 255 ("The evidence of the

non-movant is to be believed, and all *justifiable* inferences are to be drawn in his favor.")

(emphasis added). And a "mere scintilla of evidence" in the nonmovant's favor does not create a

genuine issue of fact and the non-movant may not reason on speculation and conjecture in

opposing a motion for summary judgment. *Id.* at 252. Indeed, if the evidence creating the

alleged factual conflict "is merely colorable, or is not sufficiently probative, summary judgment

may be granted." *Id.* at 249–50. This ambiguous—at best—statement cannot overcome the

presumption of good faith ascribed to agency affidavits in FOIA cases.

Mr. Amadis's claim that "email searches normally require several different search terms,

[one] of which [is] names," Cross Mot. to Dismiss, ECF No. 31, p. 25, lacks support. The

touchstone for whether an agency has conducted an adequate search is reasonableness. *See*

*Shapiro II*, 293 F. Supp. 3d at 108. Because requesters may have common names or several

different FOIA requests, it is reasonable for an agency to use a unique identifier, like a FOIA

request number, to locate only responsive records while excluding nonresponsive records. This

is especially true when searching voluminous databases, such as email accounts.

More still, while Mr. Amadis rejects Mr. Stein's claim that emails and State's FOIA mailbox are "organized by request number," he offers no evidence to the contrary. Where an agency "affidavit avers that a reasonable search was conducted, the agency is entitled to a presumption of good faith." *Veterans for a Strong Am.* 211 F. Supp. 3d at 191. In fact, the email exchange Mr. Amadis relied on to argue that the Visa Office and Embassy had conducted searches before December 2016 cuts against him. There the State employee who responded to Mr. Amadis's email added the FOIA case number to the subject line of the email chain. *See* Stein Decl. Ex. 2, ECF No. 20-5 p. 17. This is indicative of State's common practice.

Ultimately, it was reasonable for State to use the FOIA case number as a unique identifier to search various databases, and it conducted an adequate search for records responsive to Mr. Amadis's FOIA request.

## IV.    CONCLUSION

For all these reasons, the Government's Motion for Summary Judgment will be granted. Mr. Amadis's Cross-Motion for Partial Summary Judgment will be denied. A separate order will issue.


Dated: January 31, 2019                                    _____
                                                           TREVOR N. McFADDEN, U.S.D.J.